## LUMBERMEN'S RECIPROCAL ASS'N v. HULL. (No. 1220 l.)

Court of Civil Appeals of Texas. Fort Worth. Nov. 9, 1929.

Rehearing Denied Dec. 14, 1929.

Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

Nolan Queen and E. H. Grindstaff, both of Weatherford, for appellee.

BUCK, J. G. W. Hull was an employee of the Acme Brick Company, a corporation, engaged in the manufacture of brick at Bennett, near the western boundary of Parker county. Hull was injured while handling a scraper. The driver of the team hit the horses, and they plunged forward, jerked the scraper around, and the handle of the scraper hit the plaintiff below on his leg, and he was thrown some distance, and was badly injured. The doctor testified plaintiff was permanently injured; that, after making an examination of him, he found that plaintiff had lordosis of the lumbar spine, torn joints of the

right sacroiliac joint, anteriorly, and shortening of the limb; that the right leg was shortened about two inches. the muscles were drawn, and he was unable to place a heel on the floor in a normal position and unable to use the lower limb normally; that the hip bone was considerably immobile, could not extend it up very high; that he was in constant pain; that he had treated plaintiff for those injuries for about two months; that at that time that condition looked like it was permanent; that he was not able to work or follow any gainful occupation; that in the judgment of witness plaintiff could not walk in that condition without the use of a cane and crutches without a great deal of discomfort and pain; that there might have been a tendency for the right leg to atrophy from physical disuse; that he would say he was totally disabled from any gainful occupation.

Plaintiff testified that he was able-bodied at the time he went to work for the Acme Brick Company, and that since the injury he had not been able to work; that he was not able to walk without sticks or crutches, not a step; that, when he tried to walk, he just fell down; that he had to drag one leg, the reason being that the hip bone was torn all to pieces; that he could feel the bone out of place; that before the injury he weighed 140 pounds; that the last time he weighed he weighed 120 pounds; that the right leg is not as large as it was before he got hurt; that it had perished away; that his leg and hip hurt him all the time; that he did not have any other occupation except just daily labor; that he did not know how to do anything except manual labor.

Plaintiff pleaded: That the defendant company had written a policy for the Acme Brick Company, and that it was legally authorized to write workmen's compensation in the state of Texas. He sought to recover under the policy. That he had been working for the Acme Brick Company for some weeks at the time of his injury. That on January 17, 1927, plaintiff was engaged in working in and around the brick plant at Bennett, and, as such employee, he, with other employees of the Acme Brick Company, were directed to excavate and drain certain property of the brick plant. That, unknown to him, the land where he was sent to work was filled with standing stumps and rocks, which fact was known to the Acme Brick Company. That, while following a scraper on this occasion, one of the teams, having been abused by an employee of the company, made several lunges and jumps while he was holding the handle of the scraper, said scraper hit a stump or rock, and he was hurled 15 feet after having been hit on the leg by the iron handle, thus causing his injury.

The Acme Brick Company owns over 1,200 acres of land connected with its plant. Rock creek runs through the land. There was a pond apparently on the northern part of the land, which was drained to Rock creek by a wash and ditch across an oat field. The purpose of the work to be done on the occasion of the injury was to run a ditch around the edge of the field and dam the old ditch, so that the water would not run along it, but would be forced to run through the new ditch. It is in evidence that the Acme Brick Company used the oats raised on the land for the purpose of feeding their teams, which were used in the general course of the conduct of the brick plant. The straw for the oats was used for the purpose of packing brick for shipment, a layer of straw being placed between two layers of brick, thus preventing the brick from breaking.

It was alleged by plaintiff that the Acme Brick Company owned a store, hotel, about 75 residences and quarters for their Mexican employees; that all of the roads and streets and parts and portions of the said town are kept up, maintained, and drained by the Acme Brick Company, and is operated solely for the benefit of said company, and solely and only for the purpose of expediting and helping their business in the making and selling of brick; that a railroad runs through the town of Bennett; that Rock creek, a tributary of the Brazos river, runs through the said lands of the company, and is immediately adjacent to the town of Bennett on the east; that the said Mexican residences or huts were constructed of brick, and are located to the south of the railroad, and in low, bottom land, and close to the Brazos river; that the country east of the land belonging to the company is hilly, and a great volume of water comes out of the hills and runs across a small plot of land into Rock creek above the point of the Mexican residences; that, when Rock creek was up, the excess water from this creek and from the hills on the east would cause an overflow of the plant; that, in order to protect the plant and to prevent overflow on the resident district, the Acme Brick Company constructed the ditch, dam, and levy along the east side of a small plot of ground which turned the water into Rock creek at a point that would not cause Rock creek to overflow.

Plaintiff alleged that he had been doing various kinds of work for the Acme Brick Company, and that the work he was doing on this day was in the course of his employment, and for the benefit of the company in making brick and running its plant; that by the change in the ditch, the water that came off the hills did not run through the low flat where the huts for the Mexican laborers were, but emptied directly into the creek; that formerly the Mexican huts were overflowed from heavy rains, but that after the new ditch had been constructed they would not be overflowed.

844

Defendant pleaded, in addition to a general demurrer and a general denial, that G. W. Hull was not employed by the Acme Brick Company for work around its plant; that he was employed as a farm laborer, and worked upon that property of the company used as a farm; that he was carried on the pay roll as a farm laborer; that the Lumbermen's Reciprocal Association policy contained no coverage for farm labor or laborers.

It is in evidence that the Acme Brick Company had insurance in another company to cover the employees who were not engaged directly in the making of brick, that plaintiff's attorney filed a claim before the Industrial Accident Board on the latter policy also, and that the claim was still pending before said Board at the time of the trial of this case.

## Opinion.

During the trial, and while plaintiff was on the stand, and after he had testified that W. E. Timmons was his foreman when he was working in building the dam and levee where he was injured, and after he had testified that Timmons had told him why he was building it, his counsel asked him the following question: "What was the reason, did he say, they were building this ditch or levee?" To which plaintiff made the following answer: "They were standing up there talking and I was down there breaking up rock, and Mr. Timmons said, 'this ditch will be a big help to the brick company as it will keep the water from overflowing the Mexican joint.'"

Defendant objected to this testimony on the ground that any conversation between Hull and Timmons would be hearsay, and that what Timmons said would not be binding upon the defendant in this case. These objections were overruled by the court, and defendant excepted.

It does not appear that any exception or reference was made to this holding in defendant's amended motion for new trial. There is in the record a bill of exceptions reserving the alleged error of admission of this testimony which is approved by the trial court and O. K.'d by attorneys for plaintiff. Article 2232, Rev. Civ. Statutes of 1925, provides that a new trial may be granted and judgments arrested or set aside on motion for good cause, on such terms as the court shall direct, and that such motions shall "specify each ground on which it is founded, and no ground not specified shall be considered." Appellee urges that, in view of this statute, this court cannot consider the question of the admission of the testimony of which complaint is herein made. In Hess & Skinner Engineering Co. v. Turney, 109 Tex. 208, 203 S. W. 593, it is said by Chief Justice Phillips, quoting from the headnote:

"In matters upon which a motion for new trial is required to be filed in order to secure review on appeal, those not included in such

motion are waived and can not subsequently be assigned as error. But on trial before the court without a jury no such motion is necessary to an appeal and assignments of error need not be related to it."

In Phillips Petroleum Co. v. Booles, 276 S. W. 667, 668, by the Commission of Appeals, Justice Speer reviews the holdings as to the requirement that the ground relied on for a new trial and occurring during the trial must be included in the motion for new trial. The opinion says, quoting from the headnote:

"When cause is tried by jury, whether on general charge or special issues, all questions as to sufficiency of evidence to support verdict must be raised in motion for new trial in court below."

But with reference to article 1612, Rev. Statutes, adopted in the year 1911, and amended by the Thirty-Third Legislature, p. 276, of the general laws of that year, now contained in part in article 1844, Rev. Civ. Statutes of 1925, the court said:

"However, in view of the existing conflict of decision upon a question of such vital importance in the practice, we think it not inappropriate further to discuss the rule with respect to assignments of error under the present amendment.

"In Hess & Skinner Engineering Co. v. Turney, 109 Tex. 208, 203 S. W. 593, the Supreme Court, through Chief Justice Phillips, reviewed the question quite thoroughly and announced the conclusion that the apparently mandatory language of the amendment was in truth directory in the sense that it was intended to simplify and lessen both the labor and expense of an appeal by permitting the appellant to treat his motion for new trial, when filed, as an assignment of errors so as to avoid the necessity for repeating by filing formal assignments thereafter, and declined the strict interpretation, saying:

"'It would be highly technical to confine an appellant for his assignments of error to the exact language of his motion for a new trial. This, in our view, is not what the Legislature had in mind. It intended, we think, to permit him to use his motion for that purpose if he desired, but not to deny him the right of filing formal assignments if he preferred to adopt that course.'

"In Barkley v. Gibbs, 227 S. W. 1099, the Commission of Appeals, Section B, held that an appellant may file assignments of error independent of, and subsequent to, the motion for a new trial, where those assignments identify and are in consonance with the errors raised in the motion. That holding—fitting the facts of that case—demanded a reversal of the judgment of the Court of Civil Appeals [203 S. W. 161] but the Supreme Court, in adopting the judgment recommended, used this significant language:

" 'We have expressly ruled in Hess & Skinner Engineering Co. v. Turney, 109 Tex. 208, 203 S. W. 593, that under article 1612 as amended by the act of 1913, an appellant is entitled to have considered assignments of error filed independently of these specified in his motion for a new trial. He may adopt the assignments in his motion for a new trial or not, as he chooses.'

"Harlan v. Acme, etc., Co., 231 S. W. 348, also by the same section of the Commission of Appeals, decides that it is not necessary for the assignment of error filed independently of the motion for new trial to be true copies of paragraphs of the motion. The Supreme Court expressly approved the holding of the Commission.

"The Commission of Appeals, Section A, in Temple, etc., Co. v. Lindholm, 231 S. W. 321, likewise held that—

" 'It is settled that an appellant may adopt either the assignments of error set out in his motion, or the assignments, filed independently of those in the motion. Barkley et al. v. Gibbs et al. [Tex. Com. App.] 227 S. W. 1099.'

"The Supreme Court expressly approved this holding. The same section of the Commission of Appeals again held in Green v. Hall, 228 S. W. 183, that an assignment of error filed in the district court subsequent to the adjournment of the term substantially corresponding with a ground stated for new trial should be considered by the Court of Civil Appeals. So that it appears every holding upon the subject by the Supreme Court, without any degree of variableness, has demanded a liberal interpretation of the amended statute, and would appear to be sufficient to forever set at rest the contention that an appellant was in any wise limited in his assignment of error to the grounds urged in his motion for a new trial.

"The confusion, however, has arisen apparently from an attempt to apply a different rule to nonjury and jury cases, and even to differentiate as to jury cases between those tried upon special issues and those tried under a general charge. There is nothing in any of the opinions by the Supreme Court to indicate that any such distinction should be drawn. On the contrary, logically, the rule is precisely the same with respect to assignments of error in both nonjury and jury cases and in jury trials, whether upon a general charge or special issues. The statute makes no distinction; nor does any Supreme Court decision attempt such distinction. On the contrary, Chief Justice Phillips in Hess & Skinner Engineering Co. v. Turney, supra, very aptly points out that this liberal construction of article 1612 does not interfere with the accomplishment of the useful object of the motion for a new trial where a motion for new trial is required to be filed. In that particular case it happened that the trial was before the court without a jury, but the conclusion did not turn in any wise upon that fact.

"Of course, we are not discussing the merits of assignments, but only the right to present them for consideration. Many perfectly good assignments in form are overruled, because they disclose no error, when the record is examined.

"The rule requiring a motion for new trial in the trial court in certain cases, especially illustrated in attacks upon the verdict, is of early origin in Texas, dating from Foster v. Smith, 1 Tex. 70, where Justice Lipscomb said:

" 'We will here take occasion to say, that according to what is believed to be the correct rule of practice, no judgment ought to be reversed in this court, merely on the ground that the verdict was not supported by the testimony, unless a motion had been made in the court where the verdict was rendered for a new trial, and overruled.'

"This rule of practice (and it is only a rule of practice) has been continuously followed since. Craver v. Greer, 107 Tex. 356, 179 S. W. 862. But the rule itself in no wise contravenes the further holding that an appellant may assign errors not embraced in his motion for new trial filed in the case. Both rules may, and should, be observed. A contrary holding to that here indicated with respect to assignments would bring about an anomalous situation. For instance, in jury trials, and all other cases where motions for new trial were actually filed, the appellant would be forever precluded from complaining of any error such as misconduct of the jury, newly discovered evidence, and the like, for these could only be presented for the first time in the motion for new trial, and in the nature of things the court's ruling upon such matters could not be assigned as error until after the motion had been overruled.

"From a consideration of the statute and the decisions of the Supreme Court interpreting it we deduce the following: (a) In any case where a motion for new trial is filed it may, or may not, at the option of the appellant, constitute the assignment of errors relied upon for reversal. (b) In any case, whether tried by the court or before a jury, either upon a general charge or upon special issues, the appellant may present errors to the appellate court, either through a motion for new trial filed below or by other assignments duly filed in the trial court. (c) Where other assignments are filed, they may supplement or even displace the grounds set forth in the motion for new trial filed. They need not be copies of such grounds nor even substantially the same, but may be entirely distinct and different therefrom. (d) In no case, however, will an error (not fundamental), as to a matter not called to the attention and ruling of the trial court, either in the course of trial or through the offices of a motion for

new trial, be ground for reversal in the appellate court. (e) A commendable practice in this respect is to file in all cases a motion for new trial, presenting those points which have arisen to the time, and thereafter to file in the trial court supplemental assignments of error, presenting only those matters not covered by the motion, thus availing the appellant and the courts of the benefits of the amended article 1612."

In Egan v. Lockney Farmers' Co-op. Soc., 284 S. W. 937, 939, by the Commission of Appeals, the case of Phillips Pet. Co. v. Booles is cited. The court said:

"In the Booles Case, supra, Judge Speer held that assignments of error, entirely distinct from the motion for new trial, even where such a motion was filed, could be filed, provided only the additional assignments must not relate to anything upon which the trial court did not have a chance to rule during the trial or on motion for new trial."

In George v. Wright, 286 S. W. 656, 657, by the Waco Court of Civil Appeals, it is said:

"There is no merit in this contention. Our Supreme Court has settled the question that the provision of article 1612, Vernon's Sayles' Statutes, 'Provided, that where a motion for new trial has been filed that the assignments therein shall constitute the assignments of error and need not be repeated by the filing of the assignments of error,' is not mandatory, but only directory, and that whether a case has been tried before the court or a jury, and whether submitted on special issues or a general charge, the appellant is at liberty to treat the paragraphs of the motion for a new trial as the assignments, or to file additional and independent assignments. Phillips Petroleum Co. v. Booles et ux. [Tex. Com. App.] 276 S. W. 667, and cases cited."

The case of Howley v. Sweeney, 288 S. W. 602, 605, by the El Paso Court of Civil Appeals, is an appeal from the judgment of the district court based upon a verdict of the jury upon special issues. No motion for new trial was filed, but appellant in due time filed assignments of error in the court below. The court said:

"The objections to consideration of the assignments are not well taken. Phillips Petroleum Co. v. Booles (Tex. Com. App.) 276 S. W. 667, and cases there cited."

In the case of Harlan-Elzy-Randall Co. v. American Fruit Growers, Inc., 7 S.W.(2d) 132, 133, by the Waco Court of Civil Appeals, it is said:

"Among these assignments was one complaining of the action of the trial court in refusing to instruct the jury to return a verdict in its favor. Appellant objects to our considering this assignment because same was not embraced in the motion for rehearing. We overrule this contention. Under the holdings of the Supreme Court, an appellant can assign error independent of his motion for a new trial and complain of the ruling of the trial court on any question that arose during the trial on which the ruling of the court was invoked. Phillips Petroleum Co. v. Booles (Tex. Com. App.) 276 S. W. 667; Egan v. Lockney Farmers' Co-Operative Society (Tex. Com. App.) 284 S. W. 937."

While at least the writer believes that the statute which expressly states that the motion for new trial shall "specify each ground upon which it is founded, and no ground not specified shall be considered," should be followed, yet apparently the Commission of Appeals in Phillips Petroleum Co. v. Booles, supra, has reached a different conclusion, and this conclusion has been entered as the judgment of the Supreme Court, and is consequently binding upon this court. Therefore we hold that the assignment of error must be considered.

We think, undoubtedly, that the testimony admitted was hearsay, and as to a matter concerning which hearsay testimony is not admissible. Hearsay testimony is that kind of evidence which does not derive its value solely from the credit to be attached to the witness himself, but rests also in part on the veracity and competency of some other person from whom the witness may have received his information. Volume 2, page 30, Jones Blue Book on Evidence. As said by Chief Justice Marshall in Mima Queen v. Hepburn, 7 Cranch, 290, 295, 3 L. Ed. 348, quoting from the headnote:

"Hearsay evidence is incompetent to establish any specific fact, which fact is in its nature susceptible of being proved by witnesses who speak from their own knowledge."

The court further said:

"It was very justly observed by a great judge that 'all questions upon the rules of evidence are of vast importance to all orders and degrees of men; our lives, our liberty, and our property are all concerned in the support of these rules, which have been matured by the wisdom of ages, and are now revered for their antiquity and the good sense in which they are founded.' One of these rules is, that 'hearsay' evidence is in its own nature inadmissible. That this species of testimony supposes some better testimony which might be adduced in the particular case, is not the sole ground of its exclusion. Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover, combine to support the rule that hearsay evidence is totally inadmissible."

We do not think the case of Royal Indemnity Co. v. Hogan, 4 S.W.(2d) 93, by Justice Dunklin of this court, supports the ruling of the trial court in this case. In the last-cited case, Hogan and wife were suing the insurance company for the death of their son.

while driving an automobile, allegedly for the purpose of testing the brakes, etc. Several witnesses testified that immediately before the deceased left the garage, and while he was driving the car, he stated to them that he was going out to drive the car for the purpose of testing it, and that he was driving it for such purpose. We overruled the assignments directing to the admission of the testimony, on the ground that such declarations so made by the deceased were contemporaneous with his act of driving the car, where explanatory of the purpose, and therefore were admissible under the rule of res gestæ. I. & G. N. Ry. Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; 22 Corpus Juris, 446–448; Maryland Casualty Co. v. Kent (Tex. Civ. App.) 271 S. W. 929.

We think the testimony admitted in the cited case and in the instant case are entirely different as to their character and the circumstances surrounding the utterances of such declarations. This testimony was upon a material issue in the case, that is, as to whether plaintiff was engaged in a work directly connected with the major activities of the plant, that is, the making of brick, or was engaged as a farm laborer, and we feel constrained to reverse the judgment below and remand the cause on this ground.

One of the contentions made by defendant below, though not included in its pleadings, was that plaintiff did not notify the Industrial Accident Board within the required six months after the accident. Nolan Queen, counsel for appellee, testified that he represented plaintiff and was employed for that purpose the latter part of April, 1927; that soon after he was employed he wrote Mr. Elders, the superintendent of the Acme Brick Company, about the case, telling him the matter had been put in his hands for attention. He further testified:

"I got a letter from the Ft. Worth office telling me the risk was carried by the Employers' Casualty Company. I wrote them several letters about the matter. I wrote the Industrial Accident Board for some blanks that were needed in filing of claims. In May or June we tried to settle this case, but I did not receive the blanks. I wrote these letters to them before receiving any reply. The latter part of June or the first part of July I filed this claim for Mr. Hull, claiming permanent and total disability. I received no answer from them. I wrote them then on July 30th and on August 19th. They wrote me they had not received my previous communications."

█ If the Industrial Accident Board was not notified of the accident and the claim until August 19, 1927, more than six months had elapsed since the accident. It is true that it is a rule of evidence that, where one writes a letter to another, properly stamped and

directed, and posts it in the mail, there is a presumption of delivery of the letter in due time. But we are not sure that such presumption should exist where the witness also says that he received a communication from the person to whom his former letter was written saying that he had not received it. But we will not determine this assignment, inasmuch as we have reversed the judgment for other errors in the record.

Another complaint is that the trial court erred in not defining the term "farm laborer." It is urged that farm labor does not consist merely of plowing, planting, and harvesting the crops; that there is much work to be done on the farm which is properly classified as farm labor, in addition to the preparation of the land for crops, the planting of crops, the cultivating of crops, and the harvesting of them; that the building and repairing of fences, the drainage of farm lands for the purpose of preventing injury to the soil and wasting of crops by heavy rains, the hauling of products of the farm to towns and cities, etc., all constitute farm labor, as it is understood generally and under the decisions of the courts; that therefore the jury should have been informed of the correct and enlarged definition of the term. It is true that the question was submitted to the jury as to whether plaintiff was a farm laborer in doing the work in which he was engaged at the time of his alleged injury, and the jury answered the inquiry in the negative. At least some of us are of the opinion that a correct definition should have been given of the term "farm laborer," and suggest that on another trial this term be properly defined. Article 2189, Rev. Civ. Statutes of 1925, provides:

"In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

Article 8306, § 2, by its terms excludes "farm laborer" from the operation of the Workmen's Compensation Law. For a while after the enactment of the Workmen's Compensation Law in 1913, the courts were inclined to strictly construe the term "farm laborer," as evidenced by the decisions in Slaughter Cattle Co. v. Pastrana, 217 S. W. 749, by the El Paso Court of Civil Appeals, and Gordon v. Buster, 236 S. W. 803, by the Amarillo Court of Civil Appeals. In these two cases the Courts of Civil Appeals held that farm laborers did not include ranch laborers, apparently on the theory that a ranch laborer was not engaged in the sowing and harvesting of crops. In the case of Gordon v. Buster, 113 Tex. 382, 257 S. W. 220, by Justice Pierson, it was held that the Courts of Civil Appeals in the two cases above referred to too strictly construed the term "farm laborer," and that such was broad enough to include

848

"ranch laborer" as well. The Legislature in 1921 amended what is now article 8306, § 2, so as to include ranch laborer, the emergency clause of such enactment reading:

"The fact that this Act as now construed by the courts applies to actions to recover damages for the personal injuries * * * sustained by ranch laborers, while actions by farm laborers and other domestic servants are exempted from its provisions that labor upon ranches as they are now conducted, is no more hazardous employment than farm labor, and that the producers of live stock are being caused to incur much unnecessary expense for their protection, creates an emergency."

For the reasons stated, the judgment of the trial court is reversed, and the cause is remanded. Some of us are of the opinion that the two suits against the two insurance companies should be consolidated.