## WICHITA FALLS, R. & F. W. RY. CO. v. COOPER.   (No. 9677.)

(Court of Civil Appeals of Texas. Fort Worth. Oct. 29, 1921.)

1. **Evidence ⬅️317(6), 501(7)—Testimony as to value of condemned land held hearsay and misleading; witnesses may state reasons for opinion as to value.**

In determining the market value of property taken for a railroad right of way at the time and in the condition it was when appropriated, witnesses who qualify themselves as having knowledge of market values may give their opinion and state circumstances within their knowledge which constitute the basis for such opinions; but testimony as to what the owner of lots in an adjoining tract told witness he sold them for, of what the witness heard was the asking price of the lots, or of the price another person was willing to give for such land in an exchange of properties, was improper, being hearsay and misleading.

2. **Evidence ⬅️142(1)—Price realized for isolated acres of defendant's land sold for special purposes not proper basis for establishing market value of land taken.**

In proceedings to condemn land for a railroad right of way, the price realized for isolated acres of defendant's land, when sold for special purposes, does not constitute a proper basis for establishing the market value of the land taken.

3. **Evidence ⬅️501(7)—Testimony that proposed purchaser of lands refused to buy because of railroad held incompetent to show lands not taken for right of way had been damaged.**

In proceedings to condemn land for a railroad right of way, testimony of a real estate agent, who attempted to sell lands for defendant, that the construction of the railroad operated as a hindrance to the sale thereof, basing his conclusion on the fact that on one occasion the proposed purchaser refused to buy because of the presence of the railroad, was not competent proof on the issue whether defendant's land not taken by the railroad had been damaged, in the absence of evidence of the use to which the proposed purchaser desired to put the land, or that such objections were general or frequent.

Error from Eastland County Court; R. L. Rust, Judge.

Condemnation proceedings by Wichita Falls, Ranger & Fort Worth Railway Company against R. D. Cooper. From a judgment for defendant on appeal from the commissioner's award of damages, plaintiff brings error. Reversed and remanded.

Levy & Evans, of Ranger, for plaintiff in error.

W. H. Sewell, of Breckenridge, for defendant in error.

CONNER, C. J. On November 5, 1919, the plaintiff in error was engaged in building a line of railroad into and through the town of Ranger in Eastland county. In so doing its line of railway traversed a tract of 160 acres of land owned by defendant in error, and, on the day named, of said land plaintiff in error for right of way purposes appropriated a strip 100 feet wide, aggregating 5.74 acres. Condemnation proceedings were instituted; commissioners to assess the damages were duly appointed, who assessed defendant in error's damages at the sum of $500. From this award defendant in error appealed to the county court, where a jury trial was had resulting in a judgment in his favor for the sum of $4,576, and from this judgment the railway company has duly prosecuted this writ of error.

Plaintiff in error first assails the verdict of the jury as contrary to the overwhelming preponderance of testimony, and asserts that the finding as to the value of the land in controversy is excessive and is against the manifest truth of the case. We do not find it necessary to determine the question so presented, but, as illustrating our rulings on objections to the testimony hereinafter particularly noted, we will briefly state the general condition of the evidence. Mr. M. H. Hagaman testified that he had lived in Ranger over 30 years, that he was mayor of Ranger, and that he had known of Mr. Cooper's farm for more than 30 years; that he owned land north and east of the Cooper tract, and had observed the right of way of the railroad company and was acquainted with the reasonable market value of the land in 1919, including that part taken by the railroad right of way. He gave it as his opinion that the farming land taken up by the right of way was at that time worth $50 or $60 an acre, and that the grazing land taken up by the right of way was worth $25 to $30 an acre, according to the surrounding values of lands in the community; that the land was situated about 1½ miles from the town of Ranger; that the railroad had increased the value of Mr. Cooper's land immediately along the right of way 200 per cent. or 300 per cent.; that choice corners and places along where it could be used for trackage, etc., had been increased four or five times; that he knew of land selling in that community about that time, some of which was right east of Mr. Cooper's land, for $60 per acre.

Mr. M. H. Smith testified that he had lived in Ranger about seven years, was well acquainted with the 160-acre Cooper tract; that he had been school superintendent at Ranger and had been engaged in investments in real estate; that taking into consideration every purpose for which the Cooper tract of land may be available, and leaving out the contemplation of a railroad or a survey having been made, and speaking of

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

this land as though a railroad had never been mentioned, or a right of way surveyed through there, his opinion was that the Cooper tract, as a whole, on November 5, 1919, had a reasonable cash market value of from $75 to $100 an acre.

Mr. M. R. Newnham testified that he was city commissioner of Ranger, born and raised there, and that he had been acquainted with the Cooper tract for 21 years; that he now owned land on both sides of the Cooper property, and gave it as his opinion that for farming land in November, 1919, not considering the projection of the road over his land, the fair, reasonable cash market value was $15 to $20 an acre; that its potential value might have been as high as $50 or $60 an acre; that, at the time, the Cooper property was not desirable for town lots because the town was not building that way, there were no lights or sewer or gas or any kind of extension out that way, and that the property was not inside the city limits; that there had been no demand for his (the witness') property for residence property; that Mr. Davenport's property lies south of Mr. Cooper's; that the Davenport property was placed on the market as town property about November, 1919, a little before or a little after that time, but it did not sell; that one or two shacks had been built thereon, but it all came back to Davenport.

Dr. R. H. Hodges testified that he had lived in Ranger for 28 years; that he knew the Cooper tract; that he had had experience in Ranger buying and selling real estate in the town and in the vicinity; and that, assuming that there was no railroad surveyed through the Cooper tract, in his opinion the fair cash market value of that land about November 5, 1919, for any purpose for which the surface might be used, including any future that the property might have, would be about $50 to $75 an acre.

As opposed to the foregoing testimony, a Mr. Brashier, a real estate agent, who was an agent of Mr. Cooper's, estimated the value of the Cooper land in November at $1,000 per acre. Without undertaking to set out his testimony as a whole, his opinion seems to have been based on his knowledge of the sale of one acre of the Cooper land that had been sold for a "nitro outfit" for $1,000 an acre, and a later sale of three acres to a dairy for $1,000 an acre, and upon reported sales and holdings that we shall hereinafter more particularly notice. The witness further testified that at the particular time of the appropriation he was not dealing in real estate.

Mr. V. V. Cooper testified that he thought the reasonable market value of the land in question would be $1,000 per acre, stating, however, that he did not recall any particular tract in the vicinity that had sold for that much, that property in the Glenn addition sold at from $300 to $500 a lot, and

that Mr. Davenport "told him" he got $1,000 an acre for some of his property (which was inside the city limits).

The defendant in error testified:

"I had not put my land on the market and had made no offer of my land for sale till Mr. Brashier asked me could he make a sale. I told him if he would make a sale I would sign a deed for $1,000 to one acre. My purpose was to put my 160 acres on the market in acre tracts. There was at that time a market for acre tracts of land adjacent to Ranger for parties that wanted to live out, or for teaming contractors. Before the taking of my land, and before the railroad was there, the reasonable market value of my land through which the railroad runs was $1,000 an acre. * * * I based the value of my property at $1,000 an acre in November, 1919, on what property sold for around there and for what I got for my property."

The testimony of defendant in error further disclosed that in June, 1919, his land had been assessed for taxation at $16 per acre; that the board of equalization had raised the value to $24 an acre, whereupon the defendant in error had appeared before the board and objected to a further assessment in value to $32.

In this state of the evidence the court permitted, over the objection of plaintiff in error, the witness Brashier to testify on direct examination that a Mr. Williams who owned some lots in the Glenn addition, "told me he would take two or three acres of Cooper's if Cooper would take in his lots over there, and I mentioned it to Mr. Cooper, and Mr. Cooper wouldn't do it." That the value placed on the acreage and lots was "$450 and $500 on lots, and he had three or four lots he wanted to put in on this acreage. * * * And he wanted two or three acres if he could put in the lots. Q. How many acres did he want? A. Wanted two or three acres if he could put in the lots. Q. What price was he agreeing to on the acre? A. $1,000 an acre if he could put in the lots." The witness Brashier was further permitted to testify, over the objection of plaintiff in error, on his examination in chief, that Mr. Davenport had told the witness that he had sold some of the lots in the Davenport tract of land adjoining the Cooper tract of land for $225 each, and that the witness understood that some of the lots had sold for $450, and that he had heard one of the lots had sold for $950.

[1, 2] We are of opinion that the testimony so objected to was clearly erroneous. The rule for the assessment of damages is the market value of the property actually taken by the right of way at the time and in the condition it was at the time when appropriated, and in determining this issue witnesses who qualify themselves as having knowledge of market values may give their opinion and state circumstances within their

knowledge which constitute the basis for such opinions; but we think it was clearly improper for the witness to give as original evidence the statement of what Mr. Davenport told him or what he had heard was the asking price of the lots, or of the price Mr. Williams was willing to give for three acres of the Cooper land in an exchange of properties. It was clearly hearsay and misleading. S. P. Ry. Co. v. Maddox, 75 Tex. 300, 12 S. W. 815; Land Mortgage Co. v. Campbell, 98 Tex. 372, 84 S. W. 424. Nor does the fact that isolated acres of the defendant in error's land, sold for special purposes, constitute a proper basis for establishing the market value of the land taken by the railroad company. Indeed, in the case of Denison & P. S. Ry. Co. v. Scholz, 44 S. W. 560, where the issue was one of value, it was said:

"The value of the land in the shape it was at the time when damaged is the true inquiry. Its value must be considered in the aggregate, and not what it would be if divided into lots. As the property in controversy was not divided into lots when the road was constructed, evidence would not be admissible to show the value of separate lots if divided. Silliman v. Gano, 90 Tex. 637, 39 S. W. 559, and 40 S. W. 391; Bradn. Ev. 483; Rog. Exp. Test. p. 376. Nor is the value of lots in the same neighborhood admissible to show the value of the lot in question. But, if the witness testifying knows the value of surrounding property, * * * he may be questioned on cross-examination as to property in the same neighborhood similarly situated, to test his knowledge and judgment as to the value."

We know of no case that has gone so far as to hold that as original evidence of market value the witness may state, as did the witness Brashier, the asking price of an individual owner of lots, especially when no evidence is offered showing the open market sales of lots at the prices asked. We conclude that for the errors so shown the judgment must be reversed and the cause remanded.

[3] In view of another trial, we will also refer to two other assignments urging error to the testimony of the witness Brashier. One of the issues submitted to the jury was whether defendant in error's land not taken by the railroad company had been damaged, and on this issue the witness Brashier was permitted to state, over the objection of the plaintiff in error, that the construction of the railroad operated as a hindrance to the sale of defendant in error's land, basing this conclusion upon the fact that on one occasion in an effort to sell a part of the Cooper land the proposed purchaser refused to take it because of the presence of the railroad. The use to which the proposed purchaser desired to put the land was not shown, nor was it shown that objections of

the kind were general or even frequent, and we cannot think that a simple objection of the kind by an isolated purchaser, or two purchasers, is competent proof of the issue upon which such evidence was tendered. What we say at this point is, as already stated, in view of another trial only, inasmuch as the jury found that the remainder of defendant in error's land had not been damaged by the construction of the road.

Judgment reversed, and the cause remanded.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes