Ralph B. OAKLEY et al., Appellants,

v.

STATE of Texas, Appellee.

No. 10844.

Court of Civil Appeals of Texas.

Austin.

May 17, 1961.

Rehearing Denied June 7, 1961.

David L. Tisinger, Austin, for appellant.

Will Wilson, Atty. Gen., H. Grady Chandler, Jay Howell, Jr., Joseph G. Rollins, Asst. Attys. Gen., for appellee.

GRAY, Justice.

This is a condemnation proceeding. It was brought by the State of Texas against appellants, Ralph Oakley, Hilldale Development Company, Mutual Savings Institution and the Austin National Bank to condemn, for highway purposes, 66.1 acres of land out of a tract of 100 acres owned by appellants.

The 66.1 acres takes the interior portion of the 100 acre tract and leaves remaining four irregular shaped tracts entirely separated from each other. These separate tracts are: one containing 24.28 acres, one containing 3.02 acres, one containing 4.07 acres, and one containing 2.66 acres. Our statement of the acreage in the remaining tracts is approximate only. Appellee says that appellants owned 100.49 acres of land. This statement would cause a slight difference in the stated acreage in the remaining tracts however we consider that unimportant here.

The commissioners awarded appellants $67,000. Appellants appealed from this award and at the trial the jury found that the market value of the 66.1 acres of land taken was $62,500 and that the market value of the remaining portions of the land was not decreased by the taking. The issues inquiring as to the market value of the remaining portions of the land before and after the taking were conditionally submitted, the jury being instructed to answer them only if they answered the preceding issue "Yes." The preceding issue was answered "No" and the issues were not answered.

The judgment rendered awarded appellants a recovery of $62,500.

It is our opinion that appellants' second point must be sustained and for that reason it will be first considered. This point is to the effect that the trial court erred in permitting appellee's witness Frederick to testify from hearsay to the sale price of various tracts of land as a basis for his expressed opinion of the market value of the 66.1 acre tract as well as the other tracts involved.

The testimony of this witness covers 135 pages, more than one-third of the statement of facts. He testified to over twenty land sales and stated the sales price of each. On voir dire he said he did not participate in the sales, that he did not make the sales, that he was neither buying nor selling and said that he confirmed the sales with one of the principals involved. The trial court allowed appellants a full bill to this testimony, their objection being that it was hearsay.

Appellee does not say that the testimony was not hearsay but says that market value of land is a matter of opinion, that the sales testified to were sales of properties comparable to the property in question and afforded a basis for an opinion of the market value of the subject property.

In applying appellants' objection to the facts here the following explanation is proper. The witness was offered and testified as an expert and as qualified to express his opinion as to land values and in particular the market value of the tracts of land here involved. It may be said that he was qualified to express his opinion that the lands involved in the several sales were comparable to appellants' land. Those matters however are beside the point here. He testified from hearsay the prices the lands sold for. He testified that the value of the 66.1 acres of land taken was $49,401, that the value of the 3.02 acre tract was lessened by the taking and that the value of the other three tracts was increased by the taking.

Frederick's testimony as to the market value of the 66.1 acres of land taken was lower than that of appellee's other witnesses and also of appellants' witnesses. It cannot be denied that he was an important witness for appellee nor that his testimony as to the price of comparable sales of land bore directly on the disputed and controverted issues in this case—the market value of the land in question. If the complained of evidence was not admissible then it must be said that appellants were prejudiced by its admission.

We are not here confronted with the question of cross-examination of the witness to test the weight of his testimony or to discredit it. The hearsay evidence here was offered and received on direct examination as original evidence of the market value of the land involved which value was the very issue to be determined.

In 17 Tex.Jur. Sec. 210 at p. 520, it is said:

"Hearsay evidence is incompetent to establish any fact which is in its nature susceptible of being proved by witnesses who speak from their own knowledge. The fact that it supposes some better testimony which might be adduced in the particular case is not the sole ground of its exclusion; its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover, combine to support the rule that it is inadmissible. Not only is it not the best evidence; it is not even secondary evidence; it is no evidence."

And see: Lumbermen's Reciprocal Ass'n v. Hull, Tex.Civ.App., 23 S.W.2d 842, 846. Er.Dism.

In City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, 816, the court said:

"A witness may give his opinion of the present market value of the land, taking into consideration its adapt-ability to subdivision for residential and commercial purposes and the cost of converting it to such uses, but inquiry into the details or mental processes by which the witness arrives at his conclusion is only proper on cross examination for the purpose of testing the credibility of the witness or for laying a predicate for impeachment."

The announcement of our Supreme Court supra cannot be interpreted as condoning or authorizing the admission of hearsay testimony when offered on direct examination as original evidence.

In its brief appellee says:

"Appellants' witness, Crow, testified to certain sales that he had been interested in, as an agent for the purchaser, which were "blocked up" for the Capital Plaza Shopping Center on the extreme northerly limits of Austin (the subject property being on the extreme southerly limits of Austin), and used these sales as 'comparable sales' with he said justified, in part, his opinion of value of the subject property.

"Appellee's witness Frederick, a real estate broker and professional appraiser, testified on direct examination as to certain sales of properties in the area of subject property which he considered comparable to the extent that they aided him in arriving at an opinion of value. These sales were tendered for the limited purpose of showing a part of the basis upon which the witness arrived at his opinion of value and also as rebuttal to the similar type of testimony of witness, Crow."

We quote from the testimony of the witness Crow:

"Q. Capital Plaza; now, where is it? A. That is in the northeast part of the city on the Interregional Highway.

"Q. How many acres are involved there? A. There are 48 acres.

"Q. Are you active in that? I mean, is that hearsay with you, or were you active? A. I assembled the land and sold it to outside investors, and I am the local leasing agent in charge of it at this time."

The second part of appellee's statement violates the announcement in City of Austin v. Cannizzo supra, and the witness Crow testified from personal knowledge and not from hearsay.

▮ We hold that the hearsay evidence here complained of was not admissible, that it was prejudicial and requires that the cause be reversed.

In view of another trial we will consider appellants' other points.

Appellants' witness Holmes, an engineer, had created a subdivision on the 100 acre tract. He had platted the subdivision and had actually staked it out on the ground. This plat had been filed with the City of Austin and approved by it subject to "final fiscal arrangements for sewerage and water." Appellants offered the plat in evidence but it was not admitted.

The making of the plat and its approval by the City was prior to the taking of the land by the State. After the exclusion of the offered plat the witness Holmes testified as to what he did on the ground and generally gave the terrain, slope, and topography of the land.

▮ It is elementary that for the purpose of showing the market value of land its adaptability for any use may be shown. This includes its adaptability for subdivision as a prospective use of the property. It is our opinion that the plat prepared prior to the taking, showing the actual subdivision on the ground by surveys and markings would be helpful to the jury in deciding the beneficial uses of the land and also in determining market value.

Even if, as is argued by appellee, the witness Holmes was permitted to orally testify to what he did in making the plat and to the facts showing he had actually made the survey and had a knowledge of the topography of the land and that he considered the land susceptible for subdivision, we think the plat would assist the jury in evaluating the evidence. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 200, 979.

▮ The mere fact that property may be subdivided into lots and blocks for residential and business purposes is not the only test of its value for subdivision purposes. The kind and character of lots and blocks into which the land may be subdivided would be evidence of the value of the land for such purpose and would aid the jury in determining value. We think that at another trial the plat should be admitted.

There was testimony from witnesses stating their opinions as to the market value of the four remaining tracts before and after the taking. This testimony stated such values in dollars and cents. There is also evidence by appellants' witnesses, that such value was decreased by the taking and, by appellee's witnesses, that such value was enhanced by the taking.

▮ In answer to issue one the jury found that the market value of the 66.1 acres of land taken was $62,500. We quote the other submitted issues:

"Special Issue No. 2: From a preponderance of the evidence, do you find that the market value of the remainder of defendants' 100 acre tract of land not condemned, that is, the balance of defendants' abutting property other than the land inquired about in Special Issue No. 1, above, was decreased in market value as a result of the condemnation by the State of Texas".

"Answer: Yes or No.

"Answer: 'No.'

"Special Issue No. 3: If you have answered the preceding Special Issue 'No', then you need not answer the following Special Issues; but, if you have answered the preceding Special Issue No. 2 'Yes', then you will answer Special Issues Nos. 3 and 4.

"From a preponderance of the evidence, what do you find was the market value of Defendants' remaining portions of land, exclusive of the 66.1 acre tract condemned, on December 31, 1958, immediately *before* the 66.1 acre tract was condemned for highway purposes.

"Answer in dollars and cents.

"Answer: ———

"Special Issue No. 4: From a preponderance of the evidence what do you find was the market value of the remaining portions of Defendants' land, exclusive of the 66.1 acre tract condemned, on December 31, 1958, immediately *after* the condemnation of the tract condemned for highway purposes.

"Answer in dollars and cents.

"Answer: ———."

Issues 3 and 4 were not answered.

The charge contained instructions to the jury but we do not quote the same.

Appellants objected to the submission of issues 2, 3 and 4 supra and requested the submission of separate issues as to the before and after market value of the four remaining tracts.

The before and after market value of the tracts remaining after the taking were ultimate issues to be decided by the jury. There is evidence in the record from which the jury could find and state such values. The evidence shows also that these tracts are irregular in size, in shapes and in value.

At another trial and upon evidence like that before us we think issue 2 should not be submitted and that issues similar to issues 3 and 4 should be submitted for separate findings of the jury as to the before and after value of the four remaining tracts. This submission, we believe, is in accord with and is not contrary to that recommended in State v. Carpenter supra.

The judgment of the trial court is reversed and this cause is remanded.