THE STATE OF TEXAS, Petitioner
v.
RALPH OAKLEY ET AL, Respondents

No. A-8520. Delivered March 28, 1962
Rehearing Denied May 30, 1962
356 S.W. 2d 909

GRIFFIN, SMITH, WALKER and HAMILTON, JJ., dissented.

*Will Wilson,* Atty. Gen., *H. Grady Chandler, Joseph G. Rollins* and *Jay Howell,* Asst. Attys. Gen., Austin, for petitioner.

*David Tisinger,* Austin, for respondent.

STEAKLEY, JUSTICE.

In this condemnation proceeding the jury found the market value of the 66.1 acres of land taken was $62,500.00 and the judgment awarded respondents a recovery in this amount. Respondents appealed and the Court of Civil Appeals reversed and remanded the cause (346 S.W. 2d 943) upon the holding that the trial court erred in permitting an expert witness for the State to testify to the sale prices of several tracts of land, of which he did not have firsthand knowledge, for the purpose of

showing part of the basis for his opinion of the market value of the land condemned. The Court of Civil Appeals regarded the testimony as hearsay and therefore inadmissible.

The precise problem arises from the testimony offered by petitioner of the witness, Jim Frederick, a real estate broker and professional appraiser. The witness was offered as an expert and was permitted, over objection of respondents as hearsay, to testify on direct examination concerning several sales of properties which he considered comparable, and as aiding him in reaching his opinion of the value of the tract taken, but the sales prices of which he learned from other sources. The testimony as to the other sales was not offered as proof of the facts of such sales, or of the sales prices, but for the limited purpose of showing a part of the basis for the value opinion of the witness.

We have reviewed the testimony of the witness and note that no objection was made by respondents to his qualifications as an expert "in the real estate appraisal business". It further appears that the witness was "employed by the State to make appraisals of the Ralph Oakley property" and that he testified in considerable detail concerning the manner and method of his appraisal study, together with the factors considered by him. He testified that his opinion of the value of the 66.1 acres condemned was "$49,401.00, which is an average of $747.36 an acre." He then explained at considerable length the various factors considered by him in the value conclusion to which he had testified, and stated that "the most comparable sales are those located in the immediate vicinity and that are subject to the same influences, the same traffic, the same population, the same characteristics, nearer to the location of the property you are appraising, are more comparable." Thereupon the witness was interrogated concerning the various sales which he considered, after which counsel for the State commenced a series of questions as to what the various pieces of property sold for, asking at the outset the sale price of the first piece of property to which the witness had previously testified. At this point counsel for respondents took the witness on *voir dire* and established that he did not "participate personally in the sale". Whereupon objection was interposed "to any further testimony as hearsay and going into mental processes". Counsel for the State then took the witness on direct examination and asked, "Did you confirm this sale with the buyer or the seller?" to which the witness replied, "I confirmed it with one of the principals involved." Counsel for the State then stated to the court: "Your

Honor, we tender this evidence, not to prove the actual sale itself, but as one of the bases from which the witness arrived at his opinion of value." The court overruled the objection of counsel for respondents, whereupon counsel for respondents asked, "May it clearly be understood that I have a running bill of exceptions on all of these sales that he goes into * * * on the ground that they are hearsay", in support of which counsel for respondents again took the witness on *voir dire* to establish that he, the witness, did not "participate in any of these sales" himself. The court then gave counsel for respondents "a full bill on all these sales". Thereafter the witness proceeded to recite the sales price of the properties which he had investigated and which he considered as comparable to the property involved in the condemnation suit, after which counsel for respondents interrogated him at considerable length on cross-examination.

With respect to the testimony of the witness in the particulars under review, the trial court instructed the jury as follows:

> "You are instructed that testimony by witnesses not having first hand knowledge of the matter stated that certain properties had sold for certain prices shall not be considered as evidence that such properties have sold or that such properties have sold for the prices stated, or as evidence of the market value of the property involved, but may only be considered as being information which the witnesses testified they gathered for the purpose of forming an opinion of the market value of the property involved."

The question before us is narrowed to that of the admissibility of the testimony of the expert witness concerning sales of which he did not have personal knowledge, and which was offered for the limited purpose we have noted, since neither the qualifications of the expert witness nor the comparability of the sales to which he testified are challenged. See in the latter connection *Hays v. State,* 342 S.W. 2d 167, *State v. Morse,* 342 S.W. 2d 165, and *State v. Sides,* 348 S.W. 2d 446 (all, writ refused, n.r.e.) which considered the admissibility of expert testimony as to comparable sales when questioned on the basis that the sales were not sufficiently similar to be comparable but in which the source of information to which the witness testified was not raised.

On the question thus presented there is a division of au-

thority between the courts of other states and between the Courts of Appeals in Federal jurisdictions.

Kentucky, Oregon and New Jersey have adopted the view that the testimony is admissible and that the hearsay exclusion is inapplicable. See *Stewart v. Commonwealth,* 337 S.W. 2d 880; *State v. Parker,* 357 P. 2d 548; *Delaware L. & W. R. Co. v. City of Hoboken,* 85 A. 2d 200.

We quote the analysis by the courts in *Stewart v. Commonwealth* and in *Delaware L. & W. R. Co. v. City of Hoboken,* supra:

Stewart v. Commonwealth:

"It is quite often true that the most thorough, comprehensive and accurate professional appraisals are based almost entirely on 'hearsay' in the legal sense of the word. Persons who appraise or deal in real estate professionally make it their business to keep abreast of current transactions. The value of an appraisal depends very largely on the manner in which it is developed. It is of importance to the court and jury to know how it was made and on what information it was based. If some or all of that information was acquired by hearsay, but through the customary channels of the trade, or by methods recognized as standard in the making of appraisals, we see no useful purpose in a rule of absolute exclusion. Therefore, confining the effect of this opinion to witnesses whose qualifications include experience in appraising or dealing in real estate *as a business,* we hold that testimony as to the prices paid in comparable sales is not inadmissible merely because it is secondary or hearsay evidence. Since Mr. Hennessy was professionally qualified as an appraiser and real estate broker, the fact that he had verified the prices by personal contact with the purchasers was a sufficient basis to admit his testimony on the comparable sales."

Hoboken:

"The modern trend in the law of evidence favors both a liberal rule of admissibility and the giving of a broad discretionary control to the trial judge. The present rule in many, perhaps in a majority, of American jurisdictions permits an expert witness as to value to base his opinion on those sources of information to which business men usually resort, and allow the witness to divulge to the court the data on which his opinion is based, even though hearsay testimony is thus

presented. 32 C.J.S., Evidence, Sec. 545, p. 289. Our standard of true value is the price a willing purchaser and a willing seller would agree upon. Murphy v. Town of West New York, 132 N.J.L. 111, 39 A. 2d 38 (Sup. Ct. 1944). The expert witness should consider the same elements as would willing and intelligent buyers and sellers; he may rely upon the same sources of information that they would use. As Chief Judge Parker pointed out in U. S. v. 25,406 Acres of Land, 172 F. 2d 990 (4th C.C.A., 1949), since the court adopts the standards of the market place in making valuations, there is no reason why it should close its eyes to how the market place arrives at and applies the standards. And see the opinion of Chief Justice Maltbie in Vigliotti v. Campano, 104 Conn. 464, 133 A. 579 (Conn. 1926). Also City of Baltimore v. Hurlock, 113 Md. 674, 78 A. 558 (Md. 1910), and Davenport v. Haskell, 293 Mass. 454, 200 N.E. 409 (Mass. 1936)."

Massachusetts, Colorado and Missouri hold the view that such testimony is improper as hearsay and is misleading. See *National Bank of Commerce v. City of New Bedford,* 56 N.E. 288; *Hunt v. City of Boston,* 25 N.E. 82; *City and County of Denver v. Quick,* 113 P. 2d 999; *State of Missouri v. Dockery,* 300 S.W. 2d 444.

The United States Court of Appeals for the First Circuit in *United States v. Katz,* 213 F. 2d 799, denied the contention of the government that expert witnesses "should have been allowed to testify as to those prices (paid for comparable lands) on direct examination to show the jury the basis upon which their opinion of value rested", and quoted with approval from the Massachusetts case of National Bank of Commerce v. City of New Bedford, supra, that "An expert may testify to value, although his knowledge of details is chiefly derived from inadmissible sources, because he gives the sanction of his general experience. But the fact that an expert may use hearsay as a ground of opinion does not make the hearsay admissible."

Our research does not disclose any subsequent case in Federal jurisdiction following the view stated by the First Circuit.

The less strict view was expressed by the Court of Appeals for the Fourth Circuit in *United States v. 5139.5 Acres of Land,* 200 F. 2d 659, 662, as follows:

"If the expert has made careful inquiry into the facts, he should be allowed to give them as the basis of the opinion

he has expressed. If he has not made careful inquiry, this will be developed on cross examination and will weaken or destroy the value of the opinion. Ordinarily evidence as to facts of this sort given by an expert as the basis of his opinion as to value comes with a sufficient guaranty of trustworthiness to justify the relaxation of the hearsay and best evidence rules."

The above holding has been followed by the Fourth Circuit in *United States v. Lowrey,* 246 F. 2d 472, by the Ninth Circuit in *United States v. Johnson,* 285 F. 2d 35, by the District of Columbia Circuit in *District of Columbia Redevelopment Land Agency v. 61 Parcels of Land,* 235 F. 2d 865, and by the Fifth Circuit in *International Paper Co. v. United States,* 227 F. 2d 201, 209.

The question at hand was considered by the Houston Court of Civil Appeals in cases of *City of Houston v. Collins,* 310 S.W. 2d 697, and *City of Houston v. Huber,* 311 S.W. 2d 488, each with no writ history, in which the admissibility of the testimony was upheld when "offered for the limited purpose only of showing the basis for the witness's conclusions as to the value of appellee's property," the Court citing *United States v. 5139.5 Acres of Land,* supra, and *Cole v. City of Dallas,* 229 S.W. 2d 192 (writ ref. n.r.e.). While not directly considering the question, the opinion in Cole is subject to the construction that the testimony of an expert witness concerning facts upon which his opinion is founded will not be excluded "merely because it is based upon what is usually regarded as hearsay". *Wichita Falls R. & F. W. R. Co. v. Cooper,* 235 S.W. 927 (no writ hist.) is inapplicable because the testimony there held improper was an offer as original evidence of "the statement", said the court, "of what Mr. Davenport told him or what he had heard was the *asking price* of the lots, or of the price Mr. Williams was willing to give for three acres of the Cooper land in an *exchange of properties*". (Our emphasis.)

The Court of Civil Appeals in the case at bar appears to have misconceived the nature of the problem as indicated by the following statement in the opinion: "The hearsay evidence here was offered and received on direct examination as *original evidence of the market value of the land involved* which value was the very issue to be determined." (Our emphasis.) The Court of Civil Appeals also cites the following from the opinion of this Court in *City of Austin v. Cannizzo,* 153 Texas 324, 267 S.W. 2d 808, 816, and comments that it is not subject to the interpre-

tation of "condoning or authorizing the admission of hearsay testimony when offered on direct examination as original evidence":

> "A witness may give his opinion of the present market value of the land, taking into consideration its adaptability to subdivision for residential and commercial purposes and the cost of converting it to such uses, but inquiry into the details or mental processes by which the witness arrives at his conclusion is only proper on cross examination for the purpose of testing the credibility of the witness or for laying a predicate for impeachment."

*Cannizzo* did not have the problem with which we are here concerned; moreover, as previously recognized and as adverted to immediately above, the testimony of the expert witness in the case at bar, as to the other sales which he considered in reaching his value opinion, was not offered or received by the trial court "as original evidence" of other sales, and the prices for which other properties sold, for the purpose of establishing the market value of the land in question. Inquiry into the details or mental processes on direct examination was denied by this Court in Cannizzo in relation to "opinion testimony as to the front foot value of nonexistent lots in a hypothetical subdivision (which) is too speculative to be admitted as direct evidence of market value".

■ In a sense, of course, testimony of an expert witness concerning comparable sales which he has considered in reaching his opinion touching the value of the property under consideration involves an inquiry into the mental processes of the witness; the real question, however, is whether such testimony, which is inadmissible to prove the facts of such sales as evidence of the value of the property condemned, is likewise inadmissible in another capacity, that is, to show a basis of the opinion value stated by the expert witness and in which capacity the testimony is not hearsay in the true sense. The better reasoned view, in our opinion, is that the testimony is proper in such latter capacity, where, as in the case at bar, the testimony is given by a professionally qualified appraiser whose qualifications, and the comparability of the sales to which he testifies, are not challenged. The discretion of the trial judge, particularly in these latter respects, together with the opportunity on cross-examination to bring out facts contradictory to the statements and conclusions of the expert, and the instruction of the court limiting consideration by the jury of the testimony beyond the purposes for which

it was admitted, are substantial safeguards against its misuse. Moreover, whatever facilitation of expert testimony in a condemnation proceeding there may be under our holding is available alike to the condemnor and condemnee.

The Court of Civil Appeals also considered other points of respondents "in view of another trial".

■ The first point considered was that a subdivision plat of the 100-acre tract out of which the 66.1-acre tract was taken should have been admitted in evidence because, said the court, "we think the plat would assist the jury in evaluating the evidence." The plat referred to was offered by respondents as their Exhibit No. 2 and, according to the Statement of Facts, was actually received in evidence for the limited purpose of showing the susceptibility of the property to a particular use and for no other purpose. This is recognized by counsel for respondents with the explanation that his point of error in the Court of Civil Appeals was not with reference to the subdivision plat itself but to the refusal of the trial court to admit further testimony that "the property had actually been staked out on the ground." It appears that the subdivision plat was given final approval by the City of Austin on January 6, 1955, but that financial arrangements had not been completed and the plat had not been recorded. The condemnation proceeding was instituted in November, 1958. Respondents argue that notwithstanding admission in evidence of the subdivision plat the refusal of the trial court to allow the additional proof that "the property had actually been staked out on the ground was calculated to lead the jury to believe that the subdivision was on paper only". A review of the record convinces us that respondents were given every proper advantage of the existing status of the subdivision and that the exclusion of the evidence that the property had been staked out on the ground was not reversible error.

■ The Court of Civil Appeals also criticized the manner of special issue submission. The full tract owned by respondents consisted of one hundred acres out of the interior portion of which 66.1 acres were taken. Four irregularly shaped and separated tracts remained. Special Issue No. 2 inquired if the remaining property had decreased in market value as a result of the condemnation, to which the jury answered in the negative. This rendered answers unnecessary to Special Issues 3 and 4 which inquired as to the before and after market value of the remaining property. Respondents objected to this manner of submission and requested the submission of such issues as to each

of the remaining tracts considered separately. The Court of Civil Appeals expressed the opinion that Special Issue 2 should not have been submitted and that the before and after value issues should have been separately submitted as to each of the four tracts.

We do not agree. The manner of submission was not duplicitous, as insisted by respondents, nor is the submission requested by respondents called for by the opinion in *State v. Carpenter,* 126 Texas 604, 89 S.W. 2d 194, as indicated by the Court of Civil Appeals. The ultimate issue as to the remaining property was whether or not its market value was decreased as the result of the taking of the 66.1-acre interior portion; if not, respondents were not damaged in this respect. The nature and location of each of the remaining tracts, and the circumstances surrounding them, was developed in the evidence and from this the jury could properly and fairly conclude whether or not there had been a decrease in the market value of the property remaining. Consideration of the nature of the remaining property was necessarily involved in reaching this conclusion. Fairness and justice to respondents did not require submission of the same body of issues as to each of the four separate tracts which remained. Special Issues 2, 3 and 4 fairly submitted the controlling issue as contemplated by Rule 279, Texas Rules of Civil Procedure.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered March 28, 1962.

SMITH, JUSTICE, disssenting.

The witness, Frederick, a real estate broker and professional appraiser, was sworn and qualified as an expert on land values in the involved area. He was then allowed over objection to recite out-of-court statements, made to him by parties not present at the trial, concerning sales prices for property comparable to that condemned. The witness, Frederick, had no personal knowledge of these sales. Objection was made that this testimony was inadmissible because in violation of the rule against hearsay. The State admits that the testimony was hearsay, but contends it offered the testimony not to prove the truth of the sale price but to show one of the bases from which the witness arrived at his opinion of value. In my opinion, the testimony violated the

rule against hearsay, and the introduction thereof was improper and prejudicial.

"The Hearsay rule, as accepted in our law, signifies a rule rejecting assertions, offered testimonially, which have not been in some way subjected to the test of Cross-examination."[1] But it is more than a technical rule. It is a principle, whose purpose is assurance that a full and truthful disclosure of facts will be possible. It must be as broad as its purpose:

> "The testimony of N. though not, technically, hearsay evidence, is liable to the same objections; for it is resorting to an inferior or secondary species of proof, without necessity; * * *. Hearsay testimony is from the very nature of it, attended with all such doubts and difficulties, and it cannot clear them up. 'A person who relates a hearsay, is not obliged to enter into any particulars, to answer any questions, to solve any difficulties, to reconcile any contradictions, to explain any obscurities, to remove any ambiguities: He intrenches himself in the simple assertion that he was told so, and leaves the burden entirely on his dead or absent author.' It is against sound principle, and would at once awaken distrust, for a party to resort to a secondary species of evidence, so long as the original and primary evidence exists and can be produced. The plaintiff, by means of this species of evidence would be taken by surprise, and be precluded from the benefit of a cross-examination of S. as to all those material points which have been suggested as necessary to throw full light on his information."[2]

There are factors in the present case which require the application of the rule.

> "* * * certainly most transactions are likely to be influenced by motives of the parties thereto, such as the special needs or the strong desires of the buyer, the financial or other exigencies of the seller, and the whims, follies, fancies or ignorance of local values on the part of one or both of them. Since these are all matters of which persons with only hearsay knowledge of a sale can be expected to know little or nothing, whereas those with first hand knowledge, such as a party to the sale itself or the broker or agent who effected it, can be expected to know at least something, we think the hearsay

1 5 Wigmore, Evidence, Section 1362 (3rd Ed. 1940).

2 Coleman v. Southwick, 9 John. 45, 49-50 (N. Y. 1812).

rule should be adhered to in the interest of justice to both parties."[3]

The main reason for using an expert is to provide a partial substitution of his judgment concerning the credibility of his sources of information for that of the jury on the basis that his experience better qualifies him to evaluate his findings than the official triers of fact who have only their general knowledge. Judgment and experience serve the same purpose for the expert as does cross examination for the jury. The jury rather than judging the expert's sources, judges his ability, and cross examination is available to test him in this regard. When the expert is allowed to recite in detail the specific bits of information he receives from others, those facts are before the jury to be weighed without the benefit of either experience or cross examination. If I am right in believing the jury will be more impressed by the price recited than by the experts' own opinion, then the rule[4] obtaining in Texas that hearsay has no probative force and will not support a judgment is violated. The question is: What is the best rule from the standpoint of justice which can be established in a case of this type? It seems to me it would be the better policy to adhere to the well-settled rule that hearsay testimony is not admissible as original evidence.

> "An expert may testify to value, although his knowledge of details is chiefly derived from inadmissible sources, because he gives the sanction of his general experience. But the fact that an expert may use hearsay as a ground of opinion does not make the hearsay admissible."[5]

The Court in the present case puts too great a burden on Oakley, from the standpoint of surprise, if nothing else. Obviously, under the rule laid down, if there are circumstances which could be shown as bearing on the price testified to, even assuming it is not a puffed or deflated price, the opponent must produce someone with personal knowledge of the transaction. Because the opponent does not know what sale prices may be testified about he must in order to protect his client know of every land sale involving land comparable to that involved in the suit he is trying and he must be able to produce a witness with first-hand knowledge of the sale on very short notice. This means,

---

3 Woodbury, J., United States v. Katz et al, 213 F. 2d 799, 800 (1st Cir. 1954).

4 Texas Co. v. Lee, 138 Tex. 167, 157 S.W. 2d 628 (1941, 1 McCormick & Ray, Texas Law of Evidence, Section 31 (2d Ed. 1956).

5 National Bank of Commerce of New Bedford v. City of New Bedford, 175 Mass. 257, 56 N.E. 288, 290 (1900).

in order to be well prepared, he must know of every sale within three or four miles,[6] and perhaps much farther in a rural area, and over a time span of seven or eight years or longer.[7] It would be more in harmony with well-established rules for the party who wishes the price put in evidence to have the burden of producing competent proof.

If the Court's opinion becomes the law, then not only will the parties be licensed to shop for a favorable expert, this Court will have licensed the expert to shop for favorable information to relate on the witness stand. Why use competent proof of different sales, which would necessitate putting several witnesses on the stand, with the possibility some unfavorable fact might turn up on cross-examination? Find a favorable expert, or two, who are good witnesses and they can put forth the same information and retire behind the "I was told so" shield. I fear this would be setting a dangerous precedent. If such procedure is permitted in this type of case, then there is no logical reason why it should not extend to medical testimony, for example, and allow a doctor to relate what others have told him or read excerpts from text books to the jury, or both, to show a basis for his opinion. The same would be true where a lawyer might be called upon to testify as to the reasonableness of attorney's fees. Indeed, the New Jersey case quoted in the majority opinion would apply the rule broadly enough to include such testimony.[8] Such is not the rule in Texas. Hearsay evidence is incompetent as original evidence and has no probative force. In the case of Texas Co. v. Lee, supra, this Court said hearsay is incompetent as original evidence and has no probative force. In the case of Texas Co. v. Lee, supra, this Court said hearsay is incompetent and can never form the basis of a finding of fact or of the judgment of a court. This is so whether it be objected to or not, citing Henry v. Phillips, 105 Texas 459, 151 S.W. 533; Austin Bros. v. Patten, Texas Comm. App., 294 S.W. 537.

---

6 State v. Morse, Tex. Civ. App. (1960), 342 S.W. 2d 165, wr. ref. n.r.e. (sale of land four miles from that condemned).

7 Curfman v. State, 240 S.W. 2d 482 (Tex. Civ. App. 1951, ref. n.r.e.) (sale five years before condemnation), City of Houston v. Collins, 310 S.W. 2d 697 (1958), (2½ years after condemnation).

8 Delaware, L. & W. R. Co. v. City of Hoboken, 16 N. J. Super. 543, 85 A. 2d 200, 206 (1951). Compare: People v. Samuels, 302 N.Y. 163, 96 N.E. 2d 757 (1951), reversing a lower court holding, in a sanity case, that a doctor could testify he based his opinion partly on hospital records containing some observations of laymen with this language: "* * *if it was improper that the jury should see them, they should not have been received in evidence as a basis of the experts' opinions."

The case of Bowles v. Bourdon, 148 Texas 1, 219 S.W. 2d 779 (1949), held that certain medical books which were offered in evidence were "but hearsay evidence" and not admissible as original evidence. This Court in holding that such evidence must be excluded as original evidence, said:

> "When a doctor testifies as an expert relative to injuries or diseases he may be asked to identify a given work as a standard authority on the subject involved; and *if he so recognizes it, excerpts therefrom may be read not as original evidence* but *solely to discredit his testimony or to test its weight.*" (Emphasis added.)

This Court apparently is now of the belief that a different rule should apply in a condemnation suit where an expert is testifying than the rule applied in the cases I have heretofore discussed. The case of City of Austin v. Cannizzo, 153 Texas 324, 267 S.W. 2d 808, decided by this Court in 1954, was a condemnation suit. That case, in principle, supports the position taken in this dissent. The exclusion of an inquiry into the details or mental processes by which the witness arrived at his conclusion was held in the Cannizzo case to be proper. This Court at that time was of the opinion that inquiry into the details or mental processes by which the witness arrived at his conclusion was *only* proper on cross-examination for the purpose of testing the credibility of the witness or for laying a predicate for impeachment. What were the details in that case? The details were that testimony as to the front-foot value of non-existent lots in a hypothetical subdivision was admitted in evidence over objection. This Court held that such testimony was too speculative to be admitted as *direct evidence* of market value. At least the Cannizzo case does not indicate a departure from the well-settled rule that hearsay evidence is not admissible as original evidence. In the Cannizzo case, this Court said:

> "* * * A witness may give his opinion of the present market value of the land, taking into consideration its adaptability to subdivision for residential and commercial purposes and the cost of converting it to such uses, but inquiry into the details or mental processes by which the witness arrives at his conclusion is only proper on cross examination for the purpose of testing the credibility of the witness or for laying a predicate for impeachment. * * *"

We have already made one exception to the hearsay rule in behalf of valuation experts. We let them base their opinion on

hearsay.[9] I do not think we should go farther and unnecessarily allow the hearsay to be paraded through the courtroom. To do so denies to the opponent a very substantial right without cause. It denies to him the effective use of our judicial process by denying him the right of cross-examination. Cross-examination results many times in obtaining the truth when it otherwise would not be disclosed.

The cases of City of Houston v. Collins, Texas Civ. App. (1958), 310 S.W. 2d 697, no writ hist., and City of Houston v. Huber, Texas Civ. App., 311 S.W. 2d 488, no writ hist., tend to support the State's view. These cases should not be followed. They apparently went off on the theory that the admission of such evidence was not error in view of the Court's instructions in its charge to the jury. It is impossible to eliminate prejudicial error by written instructions. It would be the best policy to not allow such evidence over proper objection to get before the jury. It should be noted that in the Huber case, supra, the Court of Civil Appeals held the admission of hearsay evidence harmless in view of the admission of similar testimony by the opposite party.

The judgment of the Court of Civil Appeals should be affirmed.

ASSOCIATE JUSTICES GRIFFIN, WALKER and HAMILTON join in this dissent.

Opinion delivered March 28, 1962.

9 See for example: Reed v. Barlow, 157 S.W. 2d 933 (Texas Civ. App. 1941, ref.), reversing, in a damage suit for failure to drill an offset well, for allowing an expert to base his opinion on: "Schlumbergers", reports of oil scouts, production data from adjoining wells, logs of nearby wells, and cores of sand from nearby wells on the ground that none of this was in evidence and all was hearsay.