**The STATE of Texas, Appellant,**

v.

**George M. GIST et al., Appellees.**

**No. 6496.**

Court of Civil Appeals of Texas.

Beaumont.

Jan. 9, 1964.

Rehearing Denied Feb. 5, 1964.

W. G. Walley, Jr., Frank M. Adams, Beaumont, for appellant.

Earl Black, Port Arthur, for appellees.

HIGHTOWER, Chief Justice.

This is a highway condemnation case in which the State has appealed from a judgment in favor of appellees. In each instance the acreage referred to in this opinion varies fractionally with the actual acreage involved.

In response to the 3 issues submitted, the jury found the value of the 4 acres taken for highway purposes on October 10, 1960, to be $12,632.00. The value of the remainder of 200 acres immediately before the taking was found to be $407,678.00. The value of the remainder immediately after the taking was found to be $388,890.00. Thus a damage award of $18,788.00.

State's first 2 points of error in substance urge the trial court erred in permitting two of appellees' appraisal witnesses, Landry and Kelley, to testify to valuation based upon a projection ten years hence, rather than the value on the date of taking. State raises no contentions under any of the 9 points in its brief relative to no evidence or the sufficiency thereof to support the findings of the jury. For clarity, a brief statement of the history, location and description of the property is necessary.

In 1958 appellees purchased a tract of 257 raw acres in the City of Port Neches with the intention of developing it for residential and commercial purposes. The south boundary line of the property abuts the blacktopped Highway 347 for some 2100 plus feet—this being the area about which the parties' contentions are primarily centered. The property was to be developed in stages from its least desirable portion, the northerly portion, by stages southerly up to Highway 347. This being a rather costly venture, the developers worked out a plan with the City of Port Neches whereby said City, by passage of a bond issue, supplied water and sewer lines at a cost of $80,000.00 up to the boundary of the northern 57 acres which was to be the first developed residential property. The City of Port Neches adopted and approved the plans of this subdivision in its entirety. On the date of taking, October 10, 1960, this northerly 57 acres was approximately 90% completed by the sale of lots and building of homes thereon. Water and sewer lines and blacktopped streets had been installed at the expense of the developers. Essentially it was the plan of the appellees to develop the remaining 200 acres by stages, as aforesaid, within a period of not more than ten years. The 4 acres condemned was a rectangular shaped tract fronting on Highway 347 for 2100 plus feet. The plans for the proposed 4-lane limited access highway called for an underpass from old Highway 347 to the remaining portion of appellees' southern boundary. Although appellees purchased the entire tract at $750.00 per acre the record is clear that certain sections of it were much more valuable than others. The area zoned commercial by the City of Port Neches was the 2100 feet fronting on Highway 347 for a depth of 600 feet. This area, including the 4 acres condemned, comprised 28 acres. The rest of the property was zoned residential by the City. The chief issue as to the value of the property was occasioned by the opinion of State's witnesses that the highest and best use of this commercial property would not be shopping center but would be some other various types of commercial purposes. On the other hand, appellees' witnesses took the position that the highest and best use of the property in the foreseeable future would be commercial, as agreed upon by the other experts, but would be shopping center specifically.

Relative to State's first 2 points of error as hereinabove stated, witness Landry testified:

"We project a ten years development for this land. We start out at the rear. We have had inclement weather, but we have been, in our opinion, successful in carrying out our plan. We are not behind in our program at all. We have sold out our first section at the present time. And we will, as soon as this litigation is over, start on our second section. It's our opinion that within the ten-year period, we will have developed this property, with all the improvements, up to the commercial frontage on the highway. That is the basis we consider a reasonable length of time in which to develop a subdivision. You can't do it over night. It takes years to develop first-class subdivisions."

In explanation of how he arrived at his opinion of the value of the property, he testified:

"A. That's the discounted figure. In other words, if you are taking property that in ten years will be worth fifteen thousand dollars, the present worth, the worth today is fifteen thousand dollars discounted by four percent over the ten year period. Q. Why do you say four per cent? A. That's a safe rate of interest to be paid. If you take ten thousand a hundred and fifty dollars, and invest it in the savings and loan, it would, at the end of ten years, be worth fifteen thousand dollars."

On such basis he then proceeded to give his opinion of the value of the 4 acres condemned and the before and after values of the aforesaid 24 acres zoned commercial as $42,664.00; $288,776.00; and $72,876.00, respectively. The essence of the basis upon which witness Kelley placed his valuations is so substantially the same as Landry's that it is unnecessary to set it out. Suffice it to say we are inclined to agree that the admission of such testimony was improper. Standing alone it fails to apprise the trier of facts of a reasonable date within the said ten year period by which the project would probably be completed. Nor are we familiar with any precedent in our jurisprudence for the discount method which said witnesses used in computing their valuations, and we hold admission of the same to have been erroneous.

However, we are not of the opinion that such error was harmful to State. Thompson, another appraisal witness for appellees, testified that he used the customary market approach in arriving at his valuations. He referred to 18 or more acceptable comparable sales of other property in the near vicinity and as a result thereof he was of the opinion that the 4 acres taken was worth $27,513.00. He stated the before and after value of the remaining 24 acres of commercial property to be $161,487.00 and $20,358.00, for a total damage figure of $141,129.00. It was his opinion that within a five year period the residential property would have been fully developed up to the commercial property, thus creating a captive market for the planned shopping center. Although there are objections in the record to Thompson's testimony as being conjectural and speculative, we find no point of error in State's brief preserving the same. Moreover, with reference to Landry's testimony which we have heretofore held erroneously admitted, it appears that counsel for appellees, apparently suspecting that the basis and method used by Landry might have been of doubtful propriety, later on in the trial pursued the more reliable and established method of eliciting Landry's

opinion valuations. Thus, at the conclusion of said witness' testimony while on re-direct examination he testified that in his opinion the market value of the 4 acres taken was $42,600.00; that the remainder of the 200 acre tract just prior to the taking was of the value of $629,000.00; that the value of the remaining 200 acre tract immediately after the taking was of the value of $413,900.00. We find no objections in the record to this latter testimony. Also, though we have hereinabove observed that Kelley used the same ten year projection and discount method used by Landry, at the conclusion of his testimony we find this qualifying statement of his to have been admitted without any objection from State:

"A. No. They were talking about the next ten years. I said any time between the next ten years. Ten years is the maximum period of time for the development of this property. It might be 3 or 4. At the progress they have made to date, it isn't unlikely to assume it will be within 5 or 6 years."

Briefly the record compels the conclusion that due to long years of experience and success as real estate developers, appellees would have fully developed their residential property within a reasonably foreseeable time in the future in accordance with positive plans which on the date of the taking had already been, in part, successfully executed. State's first 2 points of error are overruled.

By points 3, 4 and 5 State complains of the trial court's permitting appellees' aforesaid witnesses Landry, Thompson and Kelley to state to the jury the sums of money which they considered as damages to the remaining property after the taking by considering only a portion of the same. In arriving at their figures each witness testified that he considered only the 28 acres of commercial property fronting on Highway 347 as aforesaid. Excluding the 4 acres taken, they gave damage figures to the remaining commercial acreage of $215,-

900.00, $141,129.00, and $120,926.00, respectively.

Under these points State again, as under its first 2 points, urges that the method by which these witnesses arrived at their valuations was too speculative and conjectural. Secondly it contends that inasmuch as there was no disunity of use between the commercial property and the rest of the 200 raw acres, the allowance of the testimony was harmful error. We pretermit further discussion of the first contention under these points except to state that we adhere to our construction· of the record and our conclusions under the first 2 points of error.

■ Nor do we agree with State's second contention under these points. Each of these witnesses was emphatic in his opinion that the taking of the 4 acres occasioned no damage to other property than that zoned commercial. On this score, all of State's witnesses were not inclined to disagree. It was the opinion of tthe witnesses for appellees, by reason of the limited access to and from the new highway and the commercial property, that as a practical matter appellees would have to stand the loss of another 100 feet of their remaining highway frontage in order to build a service road to their commercial property. The loss of the value of that 100 feet together with the cost of road construction, bridges and culverts, was alone estimated as being well in excess of several times the sum awarded appellees as damages by the jury. It was not improper under the facts of this record for the trial court to have allowed the testimony of damages to the remaining commercial property only when, in fact, no damages resulted to the rest of the property. Tennessee Gas Transmission Co. v. Dishman, Tex.Civ.App., 303 S.W.2d 471, N.R.E. Nevertheless, in an abundance of caution, the trial court inquired of the jury, by the 2nd and 3rd special issues submitted, the value of the whole of the remaining 200 acres immediately before and after the taking, and it was simply a matter of mathematical calculation for the jury to have taken witness Thompson's testimony alone to have arrived at a damage figure in excess of that actually awarded. The cases of City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808; American Guaranty Life, Health & A. Ins. Co. v. State, Tex.Civ.App., 332 S.W.2d 135; and Minyard v. Texas Power & Light Co., Tex.Civ.App., 271 S.W. 2d 957, relied upon by State in support of its contentions being distinguishable on the facts, State's 3rd, 4th and 5th points of error are overruled.

■ Under its 6th point of error State attacks the qualifications of Landry as an appraisal witness and says the trial court erred in permitting him to so testify. We find no such objections in the record and the point is overruled.

By its 7th and 8th points of error State attacks the qualifications of witness Kelley to testify to land values in Jefferson County. It further urges that certain comparable sales testified to by him were inadmissible as hearsay.

■ Inasmuch as we have heretofore, in our discussion under State's first 2 points, held such witness' testimony to have been erroneously admitted, we pretermit a lengthy discussion under these points 7 and 8. We sustain said points, however, with the observation that Kelley's testimony was not calculated to cause the rendition of an improper judgment. Kelley's knowledge of the 4 comparable sales of which he testified was gained entirely from information received from Landry and Thompson, and from his investigation of the deed records and revenue stamps. Clearly this testimony was inadmissible as hearsay, absent qualifying instruction of the court limiting the same to the purpose of showing the basis for his value opinion. State of Texas v. Oakley, 163 Tex. 463, 356 S.W.2d 909. Nevertheless, his testimony of comparables was only cumulative of 4 among the 18 or more testified to by Thompson as herein before stated. As to such comparable sales his testimony was simply repetitious and harmless.

■ Excluding argument which State has heretofore made in support of its first 8 points, the substance of its last point is to urge error of the court in permitting Landry to testify to what profits appellees expected to make from the sale of their property at a later date.

We forego a desire to further extend this opinion by a discussion of this contention. If error occurred in such connection, which we do not concede, we consider it to have been harmless.

Judgment affirmed.