**CITY OF AUSTIN, Petitioner,**

v.

**John B. FLINK et al., Respondents.**

No. B–1732.

Supreme Court of Texas.

May 20, 1970.

H. Glenn Cortez, City Atty., Austin, Sears & Burns, Robert L. Burns, Houston, for petitioner.

McKool, McKool, Jones, Shoemaker & King, Mike McKool, Dallas, and Leslie King, Austin, for respondents.

GREENHILL, Justice.

The application for writ of error in this condemnation case was granted to review the holding of the Court of Civil Appeals, 443 S.W.2d 397, which extended an exception to the hearsay rule announced in our *Oakley* decision discussed below. Because of this erroneous extension of the *Oakley* rule, this cause is reversed and is remanded to the trial court for a new trial.

The particular condemnation arose out of the acquisition by the City of Austin of property belonging to the Flinks for its Decker Lake project. The parties stipulate that the only matter to be determined in the trial court was the value of the property taken as of March 30, 1966.

The particular problem arose over the admission of hearsay evidence that comparable property in the area had been sold under economic compulsion; i. e., that the sale was a "distress sale" and not a "voluntary" sale.

The details of the sales are set out in the opinion of the Court of Civil Appeals and

need not be repeated here. The legal problem is presented in this manner: two witnesses for the city, qualified as experts in real estate sales, testified to sales of comparable property in the area at prices per acre which were lower than that awarded by the jury in this case. The witnesses gave their opinions of the value of the property of the Flinks here taken; and under our decision in State of Texas v. Oakley, 163 Tex. 463, 356 S.W.2d 909 (1962), they were permitted to testify as to the sales which formed the basis for their opinions.

The witnesses had not been involved personally in the sales; but each, or someone under his direction, had checked with at least one of the parties to the various sales. Since each was relying on what somebody told him was the sales price of the comparable property, such testimony, if offered to prove the sales price, would be hearsay. This Court in *Oakley* held that due to the general reliability of this evidence, the fact that it could be checked by the opposite party, and to facilitate the trial of condemnation cases, this type of evidence was held to be admissible as an exception to the hearsay rule. The evidence is not admitted to prove the truth of the actual sales prices of comparable lands, but to show the basis for the opinion of the expert as to the value of the property being taken.

Two of the comparable sales relied upon by the City's experts were the sales of the property of Mr. and Mrs. Davis. Their property was sold in two parts, and the experts testified as to the price per acre received by the Davises. The price was a good deal less than the sales price of other comparable land as related by expert witnesses for the condemnees, the Flinks, and less than the amount determined to be the value of the Flink land.

Counsel for the condemnees, the Flinks, then produced an affidavit from Mrs. Davis to the effect that their land was sold because of their dire financial condition. In the affidavit, Mrs. Davis recited that because of the illness of her husband, their savings had been exhausted; that they were without funds; that it became necessary to sell the property to sustain life; that she and her husband had been told that the sale was for less than the market value of the property; and that she recognized that the sales were "distress sales."

The affidavit was, of course, hearsay evidence. Mrs. Davis was still alive, and her whereabouts were known. There was testimony that she would come to the trial if her air travel from Fort Worth were paid. The affidavit played a large part in the trial of the case, and there was quite an array of speculative testimony as to the affairs of the Davises. Witnesses were called to testify that so far as they knew, the Davis family was not economically depressed and did not sell the property for that reason. The pastor of the church attended by Mr. and Mrs. Davis was called to testify about the spiritual, physical, and financial condition of the Davises. He had no knowledge of financial distress in their home; but he also regarded them as truthful people (leaving the implication that if Mrs. Davis said something in an affidavit, it was true).

The affidavit itself was not given to the jury and was admitted by the trial court for a limited purpose, for his own consideration only. The substance of the affidavit, however, was brought home to the jury rather plainly by examination and cross-examination of witnesses.

Even though there was no admissible testimony before the jury as to the truth of the facts surrounding the Davis sales, the trial court told the jury that the Davis sales, as well as the sales of two adjacent five acre tracts, were stricken from the record. The reason lay in the affidavit of Mrs. Davis.

As stated, the testimony under *Oakley* of the expert on comparable sales is not evi-

dence for the jury to consider as to the value of the property in the area. It is not evidence of the sales, and it is not admitted for that purpose. The "sale" is not adduced in evidence. The trial court, here, however, apparently considered the expert's hearsay testimony as to the price per acre of the Davis land, as being evidence to go to the jury as to the truth of the sale; i. e., he considered that the sale had been admitted in evidence. In light of the affidavit of Mrs. Davis, he instructed the jury that these sales were stricken from the record. This, in turn, deprived the City of "evidence" of sales of comparable property at much less than "comparables" recited by the condemnees' witnesses and less than the jury awarded to the condemnees, the Flinks, and seriously impeached the expert witnesses of the City. Our opinion is that the error was of such substance as to cause the rendition of an improper verdict. It is our opinion that there was reversible error in receiving the affidavit and allowing its contents to be brought before the jury, and in "striking" the Davis and related sales of the five acre tracts because of the affidavit.

Since this case is to be retried, it is suggested that the trial court determine at a pre-trial conference, or by motion *in limine* before testimony begins, whether the Davis sales were or were not distress sales so that the expert witnesses could properly be instructed as to whether to consider and to relate them as sales they considered. The same is true with regard to the sales of three pieces of property where it was contended that they, too, were sold under economic compulsion because of the existence of a federal tax lien.

The substance of other points of error, including jury misconduct, will probably not occur upon the retrial of the case. They do not require our writing upon them, and they are overruled.

The judgments of the courts below are reversed, and the cause is remanded to the trial court for a new trial.