Houston & Texas Central Railway Company v. Postal Telegraph Cable Company.

Delivered March 23, 1898.

1. Condemnation Proceedings—Easement—Telegraph Company.

The location of part of a railroad right of way within the county in which proceedings are instituted against the railroad company to condemn an easement along the same for the construction and maintenance of a telegraph line, authorizes the condemnation in such proceeding of parts of the right of way situated in other counties. Revised Statutes, articles 4447 and 699, construed together.

2. Same—"Entire Tract" Defined.

The entire tract of land, within the meaning of the condemnation statutes, is in general so much as belongs to the same proprietor as that taken, and is continuous with it and used with it for a common purpose.

3. Same—Parties—Joint Owners.

Condemnation proceedings against one joint owner for a telegraph right of way over land owned by two parties, are binding on the party defendant, though nugatory as to the other.

4. Same—Description of Land.

In a proceeding under article 4477, Revised Statutes, for the condemnation of a

telegraph right of way, it is sufficient if the land sought to be condemned is described in the application to the county judge with such certainty as would enable it to be located by one skilled in such matters, and on appeal to the county court the description may be amended, without appointing new commissioners.

**5. Same—Opening and Conclusion.**

The denial of the claim of a railroad company to open and close in the jury trial in a proceeding under the statute to condemn an easement along its right of way for the construction and maintenance of a telegraph line, will not be deemed prejudicial, even if erroneous, where no complaint is made of the inadequacy of the damages awarded.

**6. Same—Special Benefits Considered.**

The question as to whether a railroad company will receive a special benefit as distinguished from one common to the general public (Revised Statutes, article 4462) from the construction of an additional telegraph line giving it the benefit of competing rates, is for the jury, under proper instructions by the court, in a proceeding under the statute to condemn an easement along the right of way for the telegraph line.

**7. Same—Objections to Evidence as to Damages.**

Objection on appeal to the competency of evidence introduced to aid the jury in estimating the damages in condemning a right of way is unavailing where it is not complained that the damages awarded are inadequate.

Appeal from the County Court of Dallas. Tried below before Hon. Kenneth Foree.

*R. DeArmond* and *Head, Dillard & Muse,* for appellant.

*J. H. McLeary,* for appellee.

Neill, Associate Justice.—This action was brought by appellee, a corporation of the State of Texas, against appellant, a corporation of the same State, to condemn to its use an easement for the construction and maintenance of appellee's telegraph line, a part of the railroad's right of way extending from the city of Dallas, Dallas County, through that county and the counties of Collin and Grayson to a point in the city of Sherman.

The appellee, in accordance with the provisions of article 4447, Revised Statutes, filed with the county judge of Dallas County a statement in writing showing the property sought to be condemned, the object for which the same was sought to be condemned, etc. Whereupon the county judge appointed three disinterested freeholders of Dallas County as special commissioners to assess the damages.

The commissioners, thus appointed, having appointed a day and place of hearing, issued notice, which was served upon the parties and returned, proceeded in accordance with law to determine the damages, and, having assessed the same at $207.25, reduced their decision to writing, which was dated, signed, and filed, together with all other papers connected with the case, with the county judge as required by article 4463 of the Revised Statutes.

The appellant within ten days after the decision of the commissioners was filed, filed its opposition thereto in writing, setting forth the par-

ticular causes of its opposition. Whereupon the cause was docketed and tried in the County Court, and the trial resulted in a judgment condemning the land to appellee's use and awarding appellant $237 damages.

Appellant in its first assignment of error complains of the court's overruling the plea to its jurisdiction. This plea sets forth the fact that appellant's right of way extends from the city of Houston, Harris County, to the city of Denison, in Grayson County. That it is composed of various parcels of land having no connection with one another except that they are embraced in the right of way. That the principal office of appellant was not in Dallas County, but in the city of Houston, Harris County, Texas. That in the town of McKinney the right of way of appellant was not used solely by it, but that appellant owned it in connection with the Sherman, Shreveport & Southern Railway Company. It showed that the counties of Collin and Grayson were duly organized, and negatived every fact which would give appellee the right to proceed in Dallas County to condemn lands in the counties of Collin and Grayson, unless it be, that part of the right of way sought to be condemned is situated in Dallas County. The question, then, for solution under this assignment is: "Did the fact that part of the property sought to be condemned lay in Dallas County warrant proceedings in that county to condemn the parts of the right of way situated in Collin and Grayson counties as well as the part which lay in Dallas County?"

Telegraph companies "are authorized to enter upon lands, whether owned by private persons in fee or in any less estate, or by any corporation, whether acquired by purchase or by virtue of any provision in the charter of such corporation, for the purpose of making preliminary surveys and examinations with a view to the erection of telegraph lines and from time to time appropriate so much of said lands as may be necessary to erect such poles, piers, abutments, wires, and other necessary fixtures for a magnetic telegraph, and to make such changes of location of any part of said lines as may from time to time be deemed necessary, and shall have right of access to construct said line, and, when erected, from time to time as may be required, to repair the same, and may proceed to obtain the right of way and to condemn lands for the use of the corporation in the manner provided by law in the case of railway corporations. Rev. Stats., art. 699.

By the statute providing for condemning lands by railway corporations, it is enacted that "if such company and said owner" (the owner of the land sought to be appropriated) "can not agree upon the damages, it shall be the duty of said company to state in writing the real estate and property sought to be condemned, the object for which the same is sought to be condemned, the name of the owner thereof, and his residence, if known, and file the same with the county judge of the county in which such property or a part thereof is situated; provided, if the owner resides in either county in which a portion of the land is situated, the same shall be filed in the county of his residence." Rev. Stats., art. 4447.

As we have before stated, the proceedings in this case were instituted in Dallas County in compliance with the provisions of the statute quoted. Prior to March 26, 1885, the law required the statement to be filed with the county judge of the county in which the property was situated; but at that time the article was amended by inserting the words "or a part thereof," after the word "property." This amendment was evidently made so the rule that "when a part of a tract is taken, damages or benefits to the entire tract may be considered in estimating the damages," might be observed and applied in one proceeding. When the entire tract lay in several counties, and separate proceedings were required in each county, it was practically impossible to enforce this rule in assessing the damages. If the commissioners appointed in the several counties considered only the damages to the land in their respective counties without regard to the entire tract, the rule would have been ignored; if they considered the damages to the part in the county where they were appointed with reference to the entire tract, they could not, without anticipating the action of the commissioners sitting in other counties where parts of the tract lay, truly assess the damages. So the Legislature thought it best to have the damages assessed by commissioners appointed by the county judge of the county in which the property or a part thereof is situated and the whole matter in controversy disposed of by one tribunal.

An entire tract of land within the meaning of condemnation statutes is, "in general so much as belongs to the same proprietor as that taken, and is continuous with it and used together for a common purpose." Lewis on Em. Dom., sec. 475. This definition is illustrated by the author by quotations from a number of cases cited in notes under the paragraph.

The appellant's right of way extending through the counties wherein a part of it is sought in this proceeding to be condemned to appellee's use, in our opinion, falls within this definition, is an entirety, and must be regarded as a single tract of land; and as a part of it is situated in Dallas County, the proceedings to condemn were properly instituted and prosecuted there.

If the Sherman, Shreveport & Southern Railway owned jointly with appellant a part of the land lying in the town of McKinney, Collin County, the proceedings as to such company are merely nugatory, but are binding upon the appellant to the extent of its interest.

The sufficiency of the description of the land contained in appellee's written statement to the county judge was excepted to by appellant and the exception sustained. The appellee then, in order to meet the ruling upon the exception, by leave of the court, amended the description; and, without appointing other commissioners to condemn the land, the court, over appellant's objections, proceeded with the trial of the cause.

The action of the court in permitting the amendment, and proceeding to trial without appointing a new commission to assess the damages, is assigned as error.

The descriptions of the land contained in the original application and amended petition are too long to copy in this opinion.

It will be seen from article 4447, before quoted, that the company seeking to condemn land is required in its application to the county judge to "state in writing the real estate and property sought to be condemned"—nothing is said as to its description.

"The provisions of the statute in regard to a description of the property taken, or of the location of the improvement, must be substantially complied with, or the petition (application) will be insufficient. If only a general description is required by statute, no more can be required by the courts. But the description should in all cases be sufficiently definite to enable one skilled in such matters to locate it on the ground." Lewis on Em. Dom., sec. 550; Elliott on Railroads, sec. 1029.

In a case like the one under consideration, where a telegraph company seeks to condemn a right of way over a right of way of a railroad company, the easement of the former to be acquired over that of the latter must be located and established in such manner as not to interfere materially with the use for which the land was acquired and appropriated by the railway company. And the telegraph company, as well as the tribunal to which it applies to secure the easement, must, in designating the land which it wishes to use, have regard for the rights of the railway company and make an appropriation such as will least encroach upon or interfere with such rights. This, without the railway company should agree where, upon its right of way, the establishment of the telegraph company's easement would be less burdensome to it, makes it practically impossible for the latter company to give more than a general description of the land along which it seeks to acquire an easement. In our opinion the description contained in appellee's original application was amply sufficient to enable one skilled in such matters to locate upon the ground, in such a manner as not to materially interfere with the rights of appellant, the land sought to be condemned, and that the exceptions to the petition should not have been sustained. But they were sustained. Was it error then, for the court to permit the appellee to amend and, without appointing commissioners to assess the damages to the land as described in the amendment, proceed with the trial of the cause?

Article 4468, Revised Statutes, prescribes that "If either party be dissatisfied with the decision of such commissioners" (referring to commissioners appointed by virtue of article 4445) "he may, within ten days after the same has been filed with the county judge, file his opposition thereto in writing, setting forth the particular cause or causes of his objection, and thereupon the adverse party shall be cited, and the cause shall be tried and determined as in other civil causes in said court." When appellant filed his opposition in the manner prescribed and appellee was cited, the proceedings to condemn became a civil action and was required to be tried as other causes. One of the objections filed was the exception to the description as contained in the application. This

.application stood in the place of an original petition, and when the exception was sustained, if the cause was to be tried and determined as other civil causes, the appellee, under the statute relating to amendments, had the right to amend the description in his application so as to conform it to the ruling of the court. The authority of the county court to allow the amendment and its jurisdiction to try the cause upon the amendment was as complete as though the proceedings had originated in that court. The law having conferred upon it the jurisdiction to try the cause, no authority was vested in the court or its judge to appoint other commissioners and send the case to them for the purpose of assessing the damages to the land as described in the amendment. All the parties were before the court, which had full jurisdiction of the matter in controversy, and their rights could be as well, if not better, determined there as by commissioners. To have referred the matter to commissioners would have been to commence de novo, and have required like proceedings as were had before the commissioners on the original applications—proceedings which might again have been appealed from by either party, the matter again remanded to commissioners, and the controversy protracted no telling how long. Amendments in condemnation proceedings should be encouraged whenever the defect can be remedied without depriving the owner of any substantial right, or throwing the proceedings into confusion, and the petition may be amended not only in formal matters, but to rectify substantial errors and omissions. Randolph on Em. Dom., sec. 354, and authorities cited in note 4, page 322. And the author we have just quoted says in the same section that the petition may be amended by altering the description of the property in question.

Judge Elliott, in his work on Railroads, in discussing condemnation proceedings says: "The tendency of modern cases is to be liberally extended to the right to make amendments, and this we think is the true doctrine. The right to amend should not, however, be so extended as to work injustice to a party by unjustly delaying proceedings or deprive him of reasonable opportunity to prepare for trial." Sec. 1026. The same views are expressed in Lewis on Eminent Domain, section 361.

No injustice or prejudice to appellant is averred or shown to have been done by the amendment. It is more minute in its description of the land over which appellee seeks to run its telegraph line, and seems to have been made for the purpose of establishing such line as will least disturb or interfere with appellant in the use of its right of way. But the land taken is embraced in the description contained in appellee's original application, and is not different from that originally designated.

We conclude, therefore, that the court did not err in permitting the amendment, nor in proceeding to try the case over appellant's objections.

Upon the trial the appellant claimed the right to open and conclude. This was refused by the court, and its action is assigned as error. Where, in an action of this character, the tribunal before which it is tried is a

common law jury, supervised by a court, the mode of procedure usually conforms to an ordinary trial. In fact, the statute requires it to be "tried and determined as other civil cases." "Where expropriators are obliged to show the necessity of the undertaking or other facts prerequisite to condemnation, they bear the burden of proof and hence are entitled to open and close. Where the question is simply as to the amount of compensation it is frequently held that the owner should open and close, because he claims unliquidated damages, and the same course is approved upon the hearing of an appeal. But in some States it is decided that the expropriators should open and close. The argument in support of this position is that, in the absence of proof by either party, the tribunal could not put expropriators in possession of the property on payment of nominal compensation, and that, therefore, the party who would be defeated through lack of proof, should open and close." Randolph on Em. Dom., sec. 343, and authorities cited in notes under the section. On the question, Judge Elliott in his work on Railroads says: "There is much conflict of opinion, and a general rule can not be safely stated." Sec. 1035.

No complaint is made by the appellant of the inadequacy of the damages awarded on the trial; and as, under the rule stated by Mr. Randolph, the railroad company was only entitled to open and conclude if the question was simply as to the amount of compensation, no injury is shown by the court's placing the burden of proof upon appellee and in requiring it to open and conclude. In view of this, without deciding the question as to who had the right to open and conclude, or announcing any rule upon the subject, we simply hold that appellant was not prejudiced by the ruling of the court, even though it should be considered error, and no cause of reversal is shown. But in the opinion of the writer the question was correctly ruled on by the court.

Upon the trial certain witnesses were asked the question, whether or not the building of plaintiff's line of telegraph along the right of way of defendant would be a benefit to defendant? And over defendant's objection permitted to testify that in their opinion the building of plaintiff's line of telegraph would be a benefit to defendant, because defendant was not confined in its business generally and in dispatching its trains to the use of one telegraph line. But if the new line was built defendant would get the benefit of competing rates and a benefit would accrue to it. The objections were that the evidence was irrelevant and immaterial, and the matters of benefit proposed to be introduced were those common to the general public and not a special benefit to the railroad.

The admission of the evidence is assigned as error. The appellee's counsel in answering this assignment, in his argument, says: "In regard to admitting in evidence testimony showing the benefits received by the railroad company from the construction of the telegraph line, appellant complains that they are such as it would receive 'in common with the community generally, and were not peculiar to the defendant and connected with its ownership.'"

The statute (article 4462, Revised Statutes) requires such benefits as these to be excluded from the estimate. As it is the jury that makes the estimate, these benefits must be excluded from the estimate by the jury, and they were so instructed by the court. It was not the province of the court to exclude evidence of benefits merely because it might be thought they were such as were shared by the community generally. This would have been to usurp the functions of the jury and to decide for them a question committed by the statute to their consideration in making up the estimate. This matter is analogous to the question of contributory negligence in damage cases, which the law requires in all cases to be submitted to the jury. This was fairly submitted to the jury in the charge, and was doubtless considered by them in making up their verdict. The views thus expressed are adopted by us. Besides, it is not complained by appellant that the damages recovered are inadequate.

Evidence, over objection of appellant that it was irrelevant and immaterial and not intended to establish any issue in the case, was admitted to the effect that the witnesses testifying were familiar with the building of telegraph lines along the right of way of railways, and that along such other lines of railway it was usual to put the wires twenty-five feet from the railway; but that appellee in this case for a greater portion of the distance proposed to erect its line more than twenty-five feet and as much as forty feet from the center of the track. The admission of the evidence is assigned as error. When the pleadings of the parties are looked to we are inclined to think the evidence was relevant. If it was not, it could not possibly have injured the appellant.

The charge of the court correctly presented the issues in the case and the rules for determining the damages, and there was no error in its refusal to give the special charge asked by appellant.

There is no error assigned requiring a reversal of the judgment, and it is affirmed.

*Affirmed.*