Christina H. Doornbos STAPPERS et al.,
Appellants,

v.

The STATE of Texas, Appellee.

No. 4146.

Court of Civil Appeals of Texas.

Eastland.

Dec. 12, 1966.

Rehearing Denied Jan. 13, 1967.

Weller, Wheelus & Green, Beaumont, for appellants.

W. G. Walley, Jr., Beaumont, for appellee.

GRISSOM, Chief Justice.

This is an appeal from a judgment in a condemnation proceeding by the State of Texas against Christina H. Doornbos Stappers et al. in which the State alleged it was laying out, reconstructing and improving highway Number 347, and that in connection therewith it was necessary that appurtenant drains, ditches and grades be constructed and maintained across certain land owned by the defendants and that it was necessary to take certain small portions of the defendants' land and to run drains, ditches and grades across same. The State alleged that the land to be taken was a strip across certain described land of defendants. It further specifically alleged that the State needed an easement "to dispose of spoil from the initial construction of the drainage facility" and that such spoilage be placed within 100 feet of the land taken and that said spoilage be uniformly and neatly spread, with openings left at regular intervals for drainage into a proposed channel. Based upon a jury verdict judgment was rendered for the land owners for the aggregate of the amounts found to be the difference between the value of the defendants' remaining tracts before and after the taking. The defendants obtained judgment for the land taken and damages to the remaining land for only $28,740.00, and they have appealed.

In answer to issue 13, the jury found the value of defendants' "remaining" land, before the taking, was $501,000.00 and (14) that its value after the taking was $487,-000.00, or $14,000.00 damages. The defendants filed a motion for judgment non obstante veredicto, urging the court to set aside the answer to issue 14 because the undisputed evidence established that the

value of defendants' remaining land was $89,000.00 less than before the taking, instead of the $14,000.00 difference found by the jury. The motion was overruled. In defendants' motion for a new trial there were assignments of error to the effect that the court erred in overruling said motion because there was no finding of the value of four 100 foot wide easements taken by the plaintiff on which to dispose of spoilage and because there was no evidence to sustain the jury's answers to issues 13 and 14 that defendants' remaining land was only damaged $14,000.00 and also that such findings were so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

Defendants owned approximately 197 acres of land in Port Arthur, known herein as the Doornbos tract, which was bounded on the east by State Highway 347; the four tracts taken slashed their land from east to west, cutting drainage canals from highway 347 to the 60 foot City of Port Arthur Main Outfall Channel, which runs the entire length of defendants' west boundary. Defendants say the purpose of these canals was not to drain their land, but to drain higher ground to the north and east thereof. The first easement, called the E-1 series, ran from highway 347 west to Port Arthur's Main Outfall Channel and was 30 feet wide. A ditch five feet deep, six feet wide at the bottom and twenty-six feet at the top, was dug there. This first easement taken by the State contained 1.065 acres of land.

About 1300 feet north of the E-1 easement, the State took the E-2 series of easements, which ran from highway 347 west to the 60 foot Port Arthur's Main Outfall Channel. A 45 foot wide easement was taken there, upon which a ditch was dug five to six feet deep, six feet wide at the bottom and twenty-six feet wide at the top. This canal divided and isolated the tracts on the south from those on the north of said canal. The E-2 series condemned was about 1,900 feet long and contained 2.0197 acres of land.

900 feet north of the E-2 easement, the E-3 easement was taken. It, likewise, ran from highway 347 west to the 60 foot City of Port Arthur's Main Outfall Channel. The E-3 was a 25 foot wide easement taken adjacent to a pre-existing 20 foot wide easement. Upon this 45 foot wide easement was dug a canal five feet deep, six feet wide at the bottom and twenty-six feet wide at the top. The E-3 easements were approximately 1,800 feet in length and contained about 1.007 acres of land.

900 feet north of the E-3 easement, and on the north boundary of the Doornbos tract, the E-4 series of easements was taken. E-4 ran from highway 347 west to the City's 60 foot wide main outfall channel. It was a 35 foot wide easement taken adjacent to one pre-existing 15 foot easement, with a 5 foot wide ditch. Upon this 50 foot the State dug a canal four feet deep, four feet wide at the bottom and twenty feet wide at the top. The E-4 easement was approximately 1,300 feet in length and containing 1.2715 acres.

As to each of said easements the State alleged it needed in connection therewith an easement to dispose of spoilage from said drainage ditches and that they should each be 100 feet wide and immediately adjacent to the tracts taken.

Defendants say that, in addition to taking the E-1, E-2, E-3 and E-4 easements heretofore mentioned, the State took additional easements 100 feet wide adjacent to each of said four strips on which it deposited the spoilage from three canals which, according to the State's testimony, produced 17,000 cubic yards of dirt which was spread over the defendants' adjoining land which was not taken. The defendants offered the testimony of Kohler, a practicing drainage engineer, that the Doornbos tract was much less valuable for residential purposes because thereof. Defendants say it is undisputed that the highest and

best use of such property, except the corner highway property which was commercial property, was for a residential subdivision. Defendants offered the testimony of appraiser Smelker that the value of the land taken was $15,337.00; the value of the remainder before the taking $466,839.00; the value of the remainder after the taking $376,885.00, or that the damage to defendants' remaining land was $89,954.00. Appellants offered the testimony of Thompson that the value of the land taken was $15,968.00 and testimony showing the difference in value of the remainder before and after the taking was $89,248.00. Pete M. Doornbos testified to the effect that the damage to the remainder was $96,000.00.

■ Appellants' first point is that the court erred in overruling their motion for judgment non obstante veredicto because there was no finding of the value of the four 100 foot wide easements taken by the State to dispose of spoilage from the drainage ditches. Appellants correctly say that the State sued for an easement 100 feet wide adjacent to each strip taken on which to deposit spoilage from the ditches and that said 100 foot easements were used to deposit the spoilage and that a State's witness testified that 17,000 cubic yards of earth were excavated and spread over the remaining adjoining property of the defendants. Appellants say that the State, having sued to condemn spoilage easements 100 feet wide running the entire length of the four drainage canals, upon which 17,000 cubic yards of spoilage was spread, was awarded such easements but no issue relative thereto was submitted and no finding was made as to the compensation due appellants therefor. Defendants say that the taking of such easements for disposal of spoilage on their remaining land violated Article 1, Section 17, of the Constitution of Texas, Vernon's Ann.St., which provides that no person's property shall be damaged or applied to public use without adequate compensation, unless by the consent of such person.

The State says the burden was upon the condemnees to see that appropriate issues relative thereto were submitted. The usual rule is stated in 22 Tex.Jur.2d 441, Par. 315, as follows:

"In accordance with the Rules of Civil Procedure, a condemner who fails to request submission of an issue relative to one of the interests sought to be condemned waives its right to have that interest awarded to it, and the trial court has no authority to render judgment awarding the condemner that interest. On the other hand, the failure of the condemnee to object to failure to submit issues relative to a sought interest does not constitute a waiver of his right to have those issues submitted."

Appellants say that Long v. City of Austin, Tex.Civ.App., 265 S.W.2d 632, ref. n.r.e., is a "white horse" case. There, the City by its pleadings sought condemnation of two easements. The judgment granted them two easements but there was submitted to the jury issues only as to one. They quote the following:

"It is obvious that the two easements do not cross appellant's land along the same route. No request was made by appellee for the submission of any issue relative to the second easement. In this state of the record appellee waived that ground of recovery. Rule 279, Texas Rules of Civil Procedure. Here appellant was resisting the condemnation of any easement across her land and if appellee, by failing to request issues on this independent ground of recovery, waived it, appellant could agree without being compelled to object to the failure to submit issues thereon and no waiver can be imputed to her because of such failure. Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79. This unquestionably was the status of the record at the time the verdict of the jury was received. Thereafter when the trial court came to render judgment he could not render judgment awarding relief on an

independent ground of recovery which had been waived, and a finding to support the judgment is not to be presumed as to such independent ground of recovery. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084. The trial court had no authority to render a judgment awarding appellee the second easement. Texas Employers' Ins. Ass'n v. King, Texas Civ. App., 244 S.W.2d 369; Texas Employment Commission v. Brasuell, Tex.Civ. App., 235 S.W.2d 950, error dismissed."

The State's pleadings and judgment refer to easements with openings left at regular intervals for drainage into a proposed canal. Therefore, the nature of the easements acquired by the State in the 100 foot strips running the entire length of condemnees' tract is one in which openings are required to be maintained for drainage into the canal. In other words, appellants say the easements taken deprived them of all beneficial use of their remaining land and, in any event, that the land owners were entitled to a jury determination of the value of their land taken for dumping spoilage. Ordinarily we would agree with this conclusion. However, the State in answering the condemnees' point 1 refers to said spoilage easements as "temporary easements." It agrees with appellants that in its pleading the State, in addition to the drainage easements, sought four "temporary easements", one adjoining each of the drainage easements, for disposal of spoilage. Such temporary easements were properly placed in issue by the State's pleadings. Throughout the trial appellants introduced evidence calling attention to such disposal of spoilage. But, after selection of the jury the parties entered into an agreement in open court that "the only issue involved is the value of the land taken by the condemner and the damage, if any, to the remainder of the property.—" Relying thereon, the court permitted appellants to open and close and the State confined its evidence to said agreed upon issues. The evidence showed the taking of such "temporary easements" for spreading dirt from the ditches. But,

when the evidence was closed appellants did not mention nor request an issue relative thereto but abided by said agreement as to the limited fact issues. They waived any right to recover therefor by virtue of said agreement, the courts and appellee's apparent reliance thereon and their failure to timely assert any claim relative thereto. Said stipulation as to the only issues to be determined by the jury excluded damages from spreading spoilage and confined the trial to facts relevant to the value of the land taken and damage to the remainder. Furthermore, under Rules of Civil Procedure, rule 279, failure to submit an issue is not ground for reversal unless the party complaining of the judgment requested its submission in writing in substantially correct wording or objected to the failure to submit it. Appellants did neither. We agree with the State that a holding against appellants' contention does not contravene the constitutional limitation mentioned because it expressly provides that another's property may be damaged with his consent without the necessity of paying therefor. The decision in Hale v. Lavaca County Flood Control District, Tex.Civ.App., 344 S.W.2d 245, states the law applicable here, to-wit:

"In the present case appellants do not assert a denial of due process as such, but do contend that the judgment in question is void because they were not awarded compensation. Article 1, Sec. 17 of the State Constitution contemplates that a person's property may be taken without compensation if such person consents thereto. Due process requires that the landowner be given an opportunity to establish his damages, but his is not required to do so. He may waive or disregard such right and consent to his property being taken or damaged without payment of any compensation."

Appellants' point Number 1 is overruled.

Appellants' points two through five are to the effect that the court erred

in overruling their objections to the testimony of qualified expert witnesses in substance that construction of said drainage ditches did not damage appellants' remaining land. Whether or not appellants' remaining land was reduced in value by digging drains on the land taken was an ultimate issue presented by appellants. More specifically, appellants' claim that the court committed reversible error in overruling their objection to the testimony of Avant that the value of the remaining land was not reduced by construction of drainage canals because it was based upon a hypothetical question and was a conclusion based thereon, that it was based on the assumption that before the taking appellants' remaining land was inadequately drained but that after the ditches were dug it was adequately drained by the canals constructed upon the land taken. The State produced two real estate experts and relied upon admissions from two engineers introduced by appellants. The witness Terry had been engaged in the real estate business for thirteen years; he had been upon the property, inspected it and investigated the general area for sales of comparable land. He testified as to the sales of comparable land. He checked the elevation on the the respective tracts. In most instances the elevation of property that appeared comparable which had been sold was higher than that of appellants' land, when the elevation ranged from two to five feet. He was an experienced subdivider, was one of the owners of an addition in the general vicinity of the property which had a 30 foot drainage ditch dug down the middle. He testified that it was not necessary to fence lots that backed up to the drainage ditch. Having to fence was one of the main reasons asserted by appellants as causing damage to their remaining land. This expert witness testified that proper drainage in this area largely affected the market price and caused an increase in price. He testified as a qualified expert, that in his opinion appellants' remaining land prior to the taking was worth $470,962.00; that, assum-

ing, with reference to which there was adequate testimony, that the ditches would afford proper drainage of appellants' property, in his opinion, the market value of appellants' remaining land after the taking would be $486,054.00, in other words, that appellants' remaining property would be enhanced by such drainage about $15,000.00. Mr. Avant, a real estate broker and appraiser of more than fifteen years experience, investigated appellants' land and the sale of other comparable land in the vicinity. In answer to hypothetical questions, which assumed appellants' property was not adequately drained prior to the taking but would be adequately drained by the canals on the land taken, that appellants' remaining land would be greatly enhanced in value. Appellants' engineering witnesses testified that appellants' property was subject to frequent flooding before the taking; that without being adequately drained it was not suitable for residential subdivision; that, based on their experience, education and investigation, said ditches would adequately drain appellants' property and make it suitable for a residential subdivision. Appellants' engineering expert, Mr. Kohler, testified that appellants' land before the taking was not properly drained. Engineer Neel testified that said drainage ditches would adequately drain appellants' property. Other proceedings complained of simply tend to show that during rainy weather water stood on appellants' land. All this testimony and the proceedings relative thereto, clearly, did not relate to general benefits. Cases cited by appellant are largely those where the extent of change in highway facilities were considered as conferring benefits to all land owners adjoining a highway and have no application here. The testimony complained of was admissible and relevant to the question whether appellants' remaining land had been damaged by the drainage ditches. If the drainage ditches constructed on the lands taken from appellant enhanced the value of appellants' remaining land, it had the effect of adequately draining appellants' remain-

ing land, which theretofore had not been adequately drained, such testimony was not objectionable on the theory that it permitted the jury to consider enhancement in value of land generally. On the contrary, it related to benefits peculiar to the appellants' remaining land. Appellee certainly should have been afforded the opportunity to prove that appellants' remaining land would thereby be increased in value rather than damaged. See Hall v. Wilbarger County, Tex.Civ.App., 37 S.W.2d 1041, and Houston & T. C. R. Company v. Postal Telegraph Cable Company, 18 Tex.Civ.App. 502, 45 S. W. 179, 182. In the latter case the court said it was not the province of the court to exclude evidence of benefits merely because some might possibly think they were such as those shared by the community generally, that to do so was to usurp the function of the jury and let the court decide that question of fact. In State v. Carpenter, (Tex. Com.App.), 126 Tex. 604, 89 S.W.2d 194, 201, issues suggested as proper in condemnation cases were accompanied with instructions to exclude benefits enjoyed by the community generally, indicating, as appellee correctly contends, that such evidence would be heard by the jury and that it was proper for the court to tell it to exclude those benefits that were enjoyed by the community generally. See also City of Dallas v. Priolo, (Sup.Ct.), 242 S.W.2d 176, 180.

▮ Reversible error was not committed by allowing appellee to propound hypothetical questions. One has the right to assume within the limits of the evidence, or inferences reasonably drawn therefrom, any state of facts which it justifies and a right to have expert witnesses to express their opinion upon the facts so assumed. Shuffield v. Taylor, (Tex.Com.App.), 125 Tex. 601, 83 S.W.2d 955. Appellee had the right to have such witnesses assume the drainage ditches would properly drain appellant's land. There was ample evidence thereof. It was within the province of the

real estate expert to testify what effect, in his opinion, drainage had on the market value of appellants' land. In Gale v. Spriggs, Tex.Civ.App., 346 S.W.2d 620, (Ref. n.r.e.), the court said that:

"Such appraiser could have testified and given an opinion based purely on hypothetical questions. It is well settled that value testimony may be based purely upon hypothetical questions."

See also Topletz v. Thompson, Tex.Civ. App., 342 S.W.2d 151; Aronoff v. Texas Turnpike Authority, Tex.Civ.App., 299 S. W.2d 342, 347. Moreover, such testimony was not reversible error because appellants introduced evidence of a similar character. We also overrule appellants' contention that such hypothetical questions invaded the province of the jury. International & G. N. R. Company v. Mills, 34 Tex.Civ.App. 127, 78 S.W. 11. An ultimate issue was the market value of appellants' remaining land both before and after the taking. The hypothetical questions related to drainage and its effect. If, as there was evidence to show, appellants' land in fact was improperly drained before the taking but, after the taking, was properly drained, so as to be usable for its best purpose, that is, as a residential subdivision, the evidence was relevant and admissible, tended to support the findings of market value and did not invade the province of the jury. We have considered the many points presenting procedural error, such as the error assigned to overruling appellants' objection to testimony as to whether or not fences would be necessary if appellants' remaining land backed up to the drainage ditch. We conclude that they do not show reversible error. They are all overruled.

▮ Issue 12 inquired whether the market value of appellants' remaining land had decreased as a result of taking some of appellants' land for drainage purposes. The jury answered, "Yes". It found, in answer to issue 13, that the market value

of appellants' remaining land before the taking was $501,000.00 and (14) that its value after the taking was $487,000.00, in other words, that appellants' remaining land was thereby damaged $14,000.00. Appellants complain of the conditional submission of the question of the market value before and after the taking. Such submission was in accord with the holding in State v. Oakley, 163 Tex. 463, 356 S.W.2d 909, 95 A.L.R.2d 1207, wherein the court said that the ultimate issue as to the remaining property was whether its market value was decreased as a result of the taking. Of course, only controlling issues should be submitted. Texas R.C.P. 279. The jury simply found that appellants' remaining property had decreased in value $14,000.00. As stated, issue 12 inquired whether the market value of appellants' remaining land was reduced by the taking. Appellants' objection that the land taken for drainage easements was not excluded therefrom and that they were prejudiced thereby is overruled. The issue was limited to appellants' remaining land. It excluded the land taken. There was ample evidence as to whether the remaining land of appellants had diminished or increased in value as a result of the better drainage testified to by expert witnesses. The trial court complied with Rule 277 and gave to the jury guide posts marking the thin line of demarcation between special and general benefits. We think it was in accord with rules stated in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, (Tex.Com.App.).

■ There was no reversible error committed by introduction of photographs of appellants' land before and after the taking. These pictures simply enabled the jury to have a better understanding of appellants' land before and after the taking and to more accurately answer the issues submitted.

All of appellants' points have been carefully considered. We conclude that reversible error is not shown. The judgment is affirmed.