INA OF TEXAS/NOW CIGNA
INSURANCE COMPANY OF
TEXAS, Appellant,

v.

James E. ADAMS, Appellee.

No. 09–88–176 CV.

Court of Appeals of Texas,
Beaumont.

Jan. 11, 1990.

Lori L. Bellows, Hollis Horton, Orgain, Bell & Tucker, Beaumont, for appellant.

Timothy W. Ferguson, Port Arthur, Umphrey, Eddins & Carver, Beaumont, for appellee.

## OPINION

BURGESS, Justice.

Workers' compensation carrier INA of Texas, now CIGNA Insurance Company of Texas, appeals from a judgment awarding claimant, James E. Adams, appellee, occupational disease benefits for hearing loss due to repetitious trauma in the course of employment.

The first three points of error urge the evidence is legally and factually insufficient to support jury findings of occupational disease of hearing loss arising in the course of appellee's employment with Texaco, Inc. and urge the trial court erred by denying appellant's motion for directed verdict.

When considering legal sufficiency or "no evidence" points, we consider only the evidence, and reasonable inferences therefrom, which viewed in its most favorable light supports the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). If there is any probative evidence to support the finding, the point must be overruled. *Id.* In a factual sufficiency challenge, we consider all of the evidence including that which is contrary to the verdict. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). We may sustain a factual insufficiency point only if we determine that the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust.

Appellant argues appellee's hearing loss is not compensable because appellee failed to establish the causal relationship between his hearing loss and his employment. Appellee testified he had worked for Texaco since 1953, mostly in the telephone storeroom, which was described as a 14 by 24 foot uncarpeted room containing various office equipment including telex machines, vacuum tube systems and telephones. He described the noise level in the room when the equipment was in use as louder than a baby crying or a door slamming. The parties established the OSHA standards for maximum noise levels are 80 to 90 decibels for employees exposed over eight-hour days, and continuing exposure to such noise levels may cause hearing loss. Noise levels of 80 to 90 decibels were described as similar to a baby crying or a lawn mower. The only noise level test in the subject environment was performed in December 1987 and concluded noise levels in the 60 decibel range. The person who performed the test denied knowledge of whether or not the equipment in the room was shut off during the test. Appellee testified much of the noise-producing equipment was removed around 1984 or 1985 and described the general noise levels as relatively unchanged between 1985 and 1987. There was an indication Adams was exposed to high noise levels outside his employment.

An otolaryngologist testified appellee exhibited sensorineural hearing loss of 21.8% in 1985. He concluded the loss was permanent and the result of high noise levels over an extended period of time. He concluded from the patient history that the loss was work-related. Appellee's hearing tests in 1971 and 1974 showed no hearing loss. Hearing tests administered by Texaco between 1977 and 1987 yielded hearing loss readings fluctuating from 5% to 26%. Appellee had hypertension, high cholesterol and high triglycerides, which were presented by appellant as possible causes of appellee's hearing loss, as well as advancing age and hereditary predisposition.

First, appellant argues hearing loss is an ordinary disease of life and appellee was therefore required to show he was exposed to more noise than the general population.

Appellant argues appellee failed to establish noise levels in excess of 80 decibels and therefore failed to meet his burden of proof. Appellant argues the potential causes of the hearing loss are too complex to be established by lay testimony, the percentage of hearing impairment does not coincide with the change in equipment in the work environment, and the medical testimony on causation was mere speculation. We disagree.

Ordinary diseases of life to which the general public is exposed outside the employment are not compensable except where incident to an occupational disease or injury. *TEX.REV.CIV.STAT.ANN. art. 8306 sec. 20* (Vernon Supp.1989). To establish an occupational disease, there must be probative evidence of a causal connection between the claimant's employment and the disease, *i.e.*, the disease is indigenous thereto or present in an increased degree. *Home Insurance Co. v. Davis*, 642 S.W.2d 268, 269 (Tex.App.—Texarkana 1982, no writ). Causation may be established where general experience or common sense dictates that reasonable men know, or can anticipate, that an event is generally followed by another event; where there is a scientific generalization, a sharp categorical law, which theorizes that a result is always directly traceable to a cause, forming a sequence of events from a harmful consequence to the act itself; or by probabilities of causation articulated by scientific experts. *Parker v. Employers Mutual Liability Insurance Co. of Wisconsin*, 440 S.W.2d 43 (Tex.1969). There was sufficient testimony of the noise levels in the workplace and sufficient expert testimony of noise rather than high blood pressure or age being the probable cause of the hearing loss for the jury to infer the employment caused the sensorineural hearing loss. Appellant's first, second and third points of error are overruled.

In its fourth point of error, appellant complains of the compensation rate applied by the trial court. The fifth point of error complains the incorrect compensation rate was applied to the attorney's fees award. The jury found the date of cumulative inju-

ry was December 9, 1977, the date of first distinct manifestation was October 9, 1985, and the date of last injurious exposure was December 1987. The trial commenced January 4, 1988. The trial court applied the maximum rate in effect for injuries occurring after September 1, 1987. Appellant argues the correct rate is the maximum rate in effect on the date of cumulative injury. Appellee argues in occupational disease cases the basis for the rate should be the later of the date of cumulative injury or first distinct manifestation.

An occupational disease includes damage or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time and arising in the course of employment; provided, the date of the cumulative injury is the date disability was caused thereby. *TEX.REV.CIV. STAT.ANN. art. 8306 sec. 20* (Vernon Supp.1989). Benefits accrue at the date of incapacity or disability, and at the wage rate as of that day. *United States Fire Insurance Co. v. Alvarez*, 657 S.W.2d 463 (Tex.App.—San Antonio 1983, no writ). The date of cumulative injury has been held to be the date any compensable disability was caused by the occupational disease. *Fidelity and Casualty Co. of New York v. Shubert*, 646 S.W.2d 270 (Tex.App. —Tyler 1983, writ ref'd n.r.e.); *Home Insurance Co. v. DeAnda*, 599 S.W.2d 124 (Tex.Civ.App.—Eastland), *rev'd on other grounds*, 618 S.W.2d 529 (Tex.1980). Appellee's reliance upon *Aetna Casualty and Surety Co. v. Haik*, 442 S.W.2d 836 (Tex. Civ.App.—Waco 1969, rev'd and rem'd by agr't), is misplaced because, although that case held compensation should run from the date of total incapacity, the compensation date approved by the court was the cumulative injury date rather than the date of first manifestation and partial disability was not an issue in the case. Here, the jury was asked to find "the date of the cumulative injury to James Adams' hearing." The jury was instructed " 'Cumulative Injury' means the date disability was caused by an occupational disease, if any." No complaint of the date found by the jury in answer to this issue has been presented

to this court. Workers' compensation benefits accrue from the date of cumulative injury and at the rate then in effect. Appellant's statement that this rate is $91 is not contested by appellee. Appellant's fourth and fifth points of error are sustained.

Appellant's sixth and seventh points of error complain of special issues submitted by the trial court. Appellant claims the inquiries whether the injury was a producing cause, and the duration, of any total loss of use of Adams' work-related hearing loss was an improper comment on the weight of the evidence. Its eighth and ninth points of error complain there was no finding of producing cause of loss of use of Adams' hearing and no finding of its duration. The special issues were predicated upon affirmative findings that James Adams suffered an occupational disease of hearing loss and the hearing loss arose out of and in the course of his employment with Texaco. The jury would only reach these issues if it already found a work-related hearing loss. *See Coronado Transmission Co. v. O'Shea*, 703 S.W.2d 731, 736 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Appellant does not specify what harm, if any, it suffered by reason of submission of this issue. The error, if any, is not such a denial of the appellant's rights as to be reasonably calculated to cause the rendition of an improper judgment. *Alvarez v. Missouri–Kansas–Texas R. Co.*, 683 S.W.2d 375 (Tex.1984); *TEX.R.APP.P. 81(b)(1)*. It presents no argument or authority for its points there was no finding of producing cause and duration and thus presents nothing for review. *TEX.R. APP.P. 74(f)*. There appear to be answered questions on those issues. Appellant's sixth, seventh, eighth, and ninth points of error are overruled.

Appellant's tenth point of error complains the definition of "occupational disease" submitted to the jury incorrectly stated the law and impermissibly commented on the weight of the evidence. The definition substantially follows the language of Article 8306 section 20 but inserts

after reference to repetitious physical traumatic activities the words "to wit: repetitious exposure to noise trauma, if any." No form or manner of occupational disease other than hearing loss resulting from repetitious exposure to high noise levels was at issue. A separate issue was submitted on the alleged causes of the hearing loss which were not related to employment. The definition contained the conditional language "if any" and as such was not an impermissible comment on the weight of the evidence as asserted by appellant. *See Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 810–811 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dismissed,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). Point of error ten is overruled.

■ Points of error eleven, twelve and thirteen complain the evidence was legally and factually insufficient to support the jury's failure to find age, high blood pressure, and high triglyceride level were each a producing cause of Adams' hearing loss. The medical expert stated high blood pressure was a possible cause of hearing loss but did not indicate there was a reasonable probability hypertension or high triglyceride levels caused Adams' hearing loss. He stated age could be a factor in Adams' hearing loss but stated the level of hearing loss was greater than would be expected in a person of Adams' age. This testimony is not so compelling to require an affirmative finding on the appropriate causation issues. *Garza v. Alviar, supra.* The jury's findings on these issues are not so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate, supra.* Points of error eleven, twelve, and thirteen are overruled.

■ Appellant's fourteenth point of error urges the trial court erred in awarding compensation based on total loss of use of Adams' hearing. Appellant contends the evidence of total loss of use was legally or factually insufficient. The medical testimony indicated a fluctuating degree of hearing loss. Hearing tests conducted in 1985 indicated a 26% loss; tests conducted in 1987 indicated 16% and 17% impairment.

The jury found permanent total loss of use of Adams' hearing. An issue on partial loss of use was submitted to the jury but was not answered. Mr. Adams testified he miscomprehends words and does not hear everything said by speakers at church or conventions, and has trouble hearing on the telephone. He experiences headaches, irritability, and upset stomach which he attributes to the hearing loss. He stated he experiences tinnitus, a ringing in the ear, about 60% of the time and that causes irritability and loss of sleep. He has lost no time at work due to the hearing loss and expects to continue working at Texaco. He stated the hearing loss had not adversely affected his work performance and he could still perform the duties of his employment.

A total loss of use of a member exists whenever by reason of injury, such member no longer possesses any substantial utility as a member of the body, or the condition of the injured member is such that the workman cannot procure and retain employment requiring the use of the member. *Travelers Insurance Co. v. Seabolt,* 361 S.W.2d 204 (Tex.1962). While there is much evidence of a permanent partial incapacity, all the evidence shows no more than an partial loss of use. The evidence is insufficient to show that either Adams' hearing possesses no substantial utility as a part of the body, or that he cannot procure and retain employment. We hold that the jury's finding of total loss of hearing is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate, supra.* Appellant's fourteenth point of error is sustained.

■ Point of error fifteen states the evidence is legally and factually insufficient to support the jury finding that the first distinct manifestation of Adams' hearing loss was October 9, 1985. Appellant argues this date should be the date any compensable disability was caused, and that date would be either the first date any hearing loss appeared or the first date any hearing impairment appeared. We disagree. The first distinct manifestation of

an occupational disease, which triggers the notice requirements of *TEX.REV.CIV. STAT.ANN. art. 8307 sec. 4a* (Vernon Supp.1989), must be distinct to the claimant and reasonably sufficient to cause him to believe he has the occupational disease. *Aetna Casualty and Surety Co. v. Luker*, 511 S.W.2d 587 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). The date of first distinct manifestation is the date a reasonably prudent person would recognize the existence of the disease and recognize it was related to his employment. Adams' testified he realized his ability to hear diminished by 1982 when a plant nurse told him he had some hearing impairment. He also testified he did not realize the extent of the hearing loss or that it might be work related until he saw a private doctor in 1985. The hearing test results introduced by appellant show a marked increase in hearing loss between 1982 and 1985. This is some evidence to support the jury's finding. *Garza v. Alviar, supra.* The finding that the date of first distinct manifestation of a work-related hearing loss was October 9, 1985, is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate, supra.* Point of error fifteen is overruled.

Point of error sixteen urges there is no legally or factually sufficient evidence to support the jury finding that date of last injurious exposure to appellee while working at Texaco was December 1987. Mr. Adams worked in the same room from 1961 through the date of trial. Although some of the equipment has since been removed, he described the noise level as about the same in December 1987 as in 1985. In addition, Texaco was appellee's sole employer from 1953 until trial. It was uncontested Texaco was appellee's employer for the purposes of *TEX.REV.CIV.STAT. ANN. art. 8306, sec. 24* (Vernon Supp. 1989). Appellant did not deny under *TEX. R.CIV.P. 93(13)(f)* that it was the workers' compensation carrier. Point of error sixteen is overruled.

Appellant's final point of error claims the trial court erred in admitting the testimony of the otolaryngologist described under points of error one through three because there were no facts in evidence to support the hypothetical questions propounded to him. The experts for both parties agreed noise levels of 80 to 90 decibels over an eight-hour day would cause hearing loss. Adams worked in a small, uncarpeted room containing equipment he equated to being as loud as a baby crying, a noise identified as being in the 90 decibel range. This is some evidence to support the hypothetical. One may assume within the limits of the evidence or inferences reasonably drawn therefrom, any state of facts which it justifies, and an expert witness may express an opinion upon the facts so assumed. *Stappers v. State*, 410 S.W.2d 470 (Tex.Civ.App. —Eastland 1966, writ ref'd n.r.e.). Point of error seventeen is overruled.

Points of error four, five and fourteen are sustained. The remaining points of error are overruled. A question on partial loss of use was submitted to the jury but not answered because of the affirmative finding on total permanent loss of use. Thus, we cannot render. The cause is reversed and remanded for new trial.

REVERSED AND REMANDED.